## JUDGE vs. WILKINS.

1. Mere inadequacy of consideration, within itself, and disconnected from all other facts, is not a sufficient ground for setting aside a contract, or granting relief against it in equity.

ERROR to the Chancery Court of Mobile. Tried before the Hon. J. W. Lesesne.

JOHN A. ELMORE, and COOK, for plaintiff in error:

I. Can the court afford relief or take jurisdiction of the cause? A court of chancery has an undoubted jurisdiction to relieve against every species of fraud, whether,

1. *Malus dolus* and actual, arising from facts and circumstances of imposition;

2. Or apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under a delusion, would make on the one hand, and no honest and fair man would accept on the other;

3. Or such as may be presumed from the circumstances and condition of the parties, when there is a surreptitious advantage taken of the weakness or necessity of another. When therefore an advantage, such as no honest and fair man would take, is taken of the ignorance, mistake, weakness or necessity of another, no matter from what cause these may be produced, it constitutes a fraud in equity.—2 Ves. sr. 155; Kennedy v. Kennedy, 2 Ala. 593; 1 Story's Eq. Ju., §§ 188, 197, 222, 251, 119.

II. Inadequacy of price so gross as to shock the conscience, is

sufficient evidence of fraud. And if the inadequacy is not of such a character, yet when coupled with other circumstances, it is considered evidence of unfair practices.—1 Story's Eq., §§ 188, 244, 245, 246, 248, 251; 9 Ala. 686; 12 ib. 70.

III. Of this character are the cases where the party has been relieved on the ground of surprise and want of deliberation.—1 Story's Eq., §§ 119, 147, 187, 188, 222, 251, (220 Note;) 1 Coxe, 339; 16 Ves. 82.

IV. An agent can derive no benefit from a contract made with his principal, based on superior knowledge of the property, acquired in that capacity. The relation is one of trust and confidence.—1 Story's Eq., §§ 197-8, 207, 218, 307-8-10, and Note 2, §§ 315-16, A, 317; 9 Ala. 662-84; 5 ib. 94; 4 Por. 293; Newland on Con. 451; 9 Por. 675. The above principles all apply to this case separately and conjointly, and the courts of equity grant relief on mixed considerations, when not altogether satisfied with any single one.

V. Is the complainant concluded by the trial at law?

1. The question of fraud was not submitted to or passed on by the jury; and if that court had jurisdiction of this fraud, it was never exercised.—6 Ala. 34.

2. The court of law could only inquire into the fraud attending the execution of the deed for the slaves, not that which procured its execution. The issue would be, did Judge at the time intend to execute that instrument, not how he was induced to that intention; the same issue that would arise on plea of *non est factum.*—9 Port. 63; 1 Ala. 100; 2 ib. 592; 3 Phillips' Ev. (C. & H.) Note 969, p. 1449; 3 Chitty on Pl. (Note 1,) 964; 6 Munf. 364; Clay's Dig. 340, §§ 152-3; 13 John. 430; 5 Cow. 506; 2 Rand. 426; 14 S. & R. 208.

3. The court of law could only treat the deed as void for actual fraud. It could not set it aside, or order it to be cancelled, and rescind the contract. It could not declare the deed void for inadequacy of price, or for surprise, or notice, the confidential relations of the parties, the mistake, or ignorance, or accident; these are cases of constructive fraud, cognizable only in equity. 1 Stroy's Eq., §§ 60, 190, 307, 437; White's Lead. Ca. 418, and authorities cited; Law Lib. No. 65; Story's Eq. Pl., § 473.

4. If the contract on which the Wilkins' were suing had been executory, then perhaps the court of law, on proof of the fraud,

Judge v. Wilkins.

might have refused its aid; but this was an executed contract; the title to the negroes had passed, and in that action the court could only inquire where is the title. In taking jurisdiction in such a case, the court of chancery does not say no title passed, but says it passed under such circumstances, that no honest man would keep it, and declares the purchaser a trustee for the seller.—18 Pick. 104.

5. The want or failure of consideration could not have been made a defence; because there was the bond for titles, the possession of the property, and the excess of value of the house and lot over the liens.

VI. When the defence could not be made at law, the attempt to do so will not affect the plaintiff's rights.—3 Ala. 406. ·

VII. There was an offer to rescind in time, August, 1841. If not proved, it is immaterial, as Wilkins in his answer says it would not have been accepted. T. J. Judge proves it was made in August, 1841.—Elliott v. Boaz, 9 Ala. 772.

IX. The complainant is not concluded by the cases of Dunklin v. Wilkins, 5 Ala. 199; Wilkins v. Judge et al., 14 ib. 135.

1. Because the fact of the instrument being a deed does not appear in either of the cases.

2. The first is a case at law, where the defence could not be made.

3. In the last case, the court dismissed the bill without prejudice to Judge.

4. The point of its being a deed was not made or decided by the court in either case.

X. The case of Clemens v. Loggins, 1 Ala. 652, does not militate against our views. That was an executory contract, a suit on the note, and an entire failure of consideration, and the court was called on to enforce it.

THOS. H. WATTS, contra :

1. The judgment at law is conclusive of all matters of fraud which were relied on as a defence, or which, under the issue joined, might have been relied on in the action at law, between parties and privies.—See Hopkins v. Lee, 6 Wheat. 109; 11 Mass. 445; Boynton v. Willard, 10 Pick. 166; 1 Baily, 533; 4 Rawle, 273; 10 Pick. 391; Davidson v. Shipman, 6 Ala. 27; Cummings v. McGehee, 9 Por. 349, and authorities there cited.

As to the fraud in obtaining the title to the slaves, apart from the alleged fraud in selling the house and lot, the judgment at law is conclusive; and if there should be such independent equitable ground for relief as would authorize chancery to interfere, the court of chancery must look alone to the independent equitable ground. To permit the Chancery Court to look beyond this, would permit every defendant at law to practice a fraud on the court, and unhinge its best settled rules in regard to enjoining or giving relief against judgments at law.—13 Ala. 198, and authorities there cited..

2. The fraud charged in the sale of the slaves, considered apart from the sale of the real estate, certainly was or could have been relied on as a defence at law.—See 5 Ala. 199; 13 Wend. 570; 14 Ala. 139; 3 Johns. 235; 8 Cow. 240, and Note; 18 Pick. 102; 7 Mass. 117; 2 Watts, 66; 13 Ala. 44; 5 ib. 277.

3. There is no reason why the alleged fraud in the sale of the house and lot might not have been set up in the court of law. There was no deed; the contract was executory merely. It does not appear from the bill, answer or proofs that Judge was ever in possession.—See 1 Ala. 622. The court at law could have done as complete justice as the court of equity. In neither court can the parties be placed in statu quo..

4. The fact that the fraud was not actually decided by the court of law, can give no equitable jurisdiction. The decision of the court of law was wrong, and Judge had his remedy in an appellate court. His failure to have the law case revised was his fault and neglect, and he cannot complain in equity.—Barrow v. Governor, 13 Ala. 540, and authorities there cited; 9 Ala. 120, and authorities there cited; 7 Ala. 666; 2 Port. 262; 3 Stew. 155; 2 Por. 177; 15 Ala. 503. The Chancery Court never grants relief in the nature of a new trial.—See McGrew v. Tombigbee Bank, 5 Por. 547, and authorities there cited; 8 ib. 432.

5. Every ground of fraud alleged in the bill is fully denied in the answer, and the proof utterly fails to support the bill; but on the contrary, substantially supports the answer in every essential particular. Fraud will never be presumed, but must be clearly proved.—See Story's Eq. J.; 3 J. J. Mar. 540; 8 Pet. 244; 12 ib. 178.

6. An agent may well purchase after the agency ceases.—See

McKinly v. Irvine, 13 Ala. 682. Here the agency was of short duration, and produced no such confidence and trust as would come within the rule for relief, and the proof shows clearly that no advantage was taken of Judge by means of the agency.

7. Mere inadequacy of price has never been held to authorize a rescision of a contract.—See Juzan v. Toulmin, 9 Ala. 662; 1 Story's Eq. (4th edit.) § 245 to 250, inclusive, and authorities there cited; Osgood v. Franklin, 2 Johns. Ch., and authorities there cited. There is no allegation that Judge relied on Wilkins as to the value either of the house and lot or slaves. There is no allegation that he had no opportunity of finding out the value, by the use of due diligence. A representation as to value is a matter of judgment; and if it were false, would be no ground of relief.—See 1 Story Eq. Ju., § 197, (4th edit.;) 1 Wheat. 189; Kent's Com., 2 vol. 484-5, (4 edit.;) see also, Griffith v. Spratly, 2 Bro. Ch. 179, in the Note; 5 Ves. 345. Even the civil law, as regards personal property, would not give relief.—See 1 Story's Eq., § 247. The rule that if the price given be less than half the value, applies solely to real estate; and this is wholly an artificial rule.—See 1 Story's Eq., § 247; see also, 2 S. & P. 9; 1 Por. 328; 3 Stew. 243.

8. A court of equity will never rescind a contract when the parties cannot be placed in statu quo.—1 Story's Eq., (4 edit.) § 250; Burnett v. Stanton, 2 Ala. 181; Turner v. Clay, 3 Bibb, 53, (cited in B. & H.'s Ch. Dig.) And especially is this the case, when the reason why the parties cannot be placed in statu quo, has been brought about by the fault or neglect of the party seeking relief.—See Turner v. Clay, 3 Bibb, supra; 1 Story's Eq. J., § 250. In this case, it is by Judge's failure to comply with his contract in paying the liens he undertook to pay, whereby the house and lot were sold, that the parties cannot be placed in statu quo.

9. A party who seeks equity must show that he is without fault or neglect on his part. He must come into court "with clean hands," or he cannot get relief, however much wrong he may have sustained.—See Sanders v. Fisher & Phelps, 11 Ala. 812. In this case the complainant seeks to revise a judgment at law. This cannot be done, if there appear any fault or neglect on his part.—See French v. Garner, 7 Por., and authorities cited under fifth point.

Judge v. Wilkins.

DARGAN, C. J.—William Judge, who resided in Butler County, Alabama, left the State when about eighteen years of age, and went to Mississippi. After remaining there for a time he left Mississippi and went to Texas, where he remained until the summer of 1841. At the time he left Alabama he owned a negro woman and her three children, which were in the possession of his guardian, and during his absence she had two other children. His guardian also left Alabama, and abandoned the charge and control of the slaves, but Joseph Dunklin, the brother-in-law of Judge, took possession of them as his agent and for his benefit. In March, 1841, shortly after Judge became of age, he gave to Lavender S. Wilkins, who resided in Austin, Texas, a power of attorney, authorizing him to take possession of the slaves then in Alabama, and bring them to Texas. Wilkins came to Alabama, and demanded the slaves as the agent of Judge, but Dunklin declined sending them by him. Wilkins returned to Texas without the slaves, and shortly after his return Judge agreed to buy of him and his brother, John H. Wilkins, a house and lot in the town of Austin, and agreed to give them twenty-seven hundred and fifty dollars, and in part payment he agreed to give his negroes, then in the State of Alabama, which were valued in the trade at sixteen hundred and fifty dollars; for the residue of the purchase money he agreed to pay certain debts owing by Lavender S. and John H. Wilkins, and which constituted a lien on the land. Judge executed a bill of sale for the slaves, and Lavender S. and John H. Wilkins gave him a bond to make titles to the lot upon his paying those debts and discharging the liens. A short time after this trade, both Lavender S. and John H. Wilkins left Texas, and the former came to Alabama and demanded the slaves as his property; but Judge having returned from Texas, and alleging that he had been defrauded in the trade, Dunklin refused to deliver two of the slaves which he had in his possession; whereupon an action of detinue was commenced against Dunklin in the name of Lavender S. and John H. Wilkins, and a judgment recovered against him for the slaves, or their alternate value. William Judge then filed this bill, to enjoin the delivery of the slaves by Dunklin, in discharge of the judgment, and on the ground of fraud prayed a rescision of the contract. The chancellor, being of the opinion that the evidence did not establish the fraud, dis-

missed the bill, and from this decree a writ of error has been prosecuted to this court.

As the answers fully and completely deny the allegations of fraud, we must look to the proof to see if it is established, or if any fact is proved from which the court can infer fraud.

I think that the value of the house and lot that Judge bought may be fairly fixed at fifteen hundred dollars. One of the witnesses values it at eight hundred dollars; two at twelve hundred and fifty; one at fifteen hundred, and two at two thousand dollars; they, too, were all examined on the part of the complainant. I think also, that the fair value of the slaves, situated as they were in Alabama, was about twenty-one, or two, hundred dollars. According to this valuation, Judge agreed to give twenty-seven hundred and fifty dollars for property worth fifteen hundred, but in the mode of payment adopted by the parties, and which was part of the contract, it cost him about thirty-two, or three, hundred dollars. Is this inadequacy of consideration sufficient *within itself* to justify the court in coming to the conclusion that there was fraud in the contract? I follow the language of the authorities in saying, that inadequacy of price, or other inequality in the bargain, is not *within itself* a sufficient ground to avoid a contract in a court of equity, on the ground of fraud; for courts of equity, as well as courts of law, must act upon the ground that every person, who is not under some legal disability, may dispose of his property in such manner and upon such terms as he sees fit; and whether his bargains are discreet or not, profitable or unprofitable, are considerations not for courts of justice, but for the party himself.—1 Story's Eq. § 244; Low v. Barchard, 8 Ves. 133; Griffith v. Spratley, 1 Coxe's Ch. 383; Collier v. Brown, ib. 429; Osgood v. Franklin, 2 Johns. Ch. 1-23, and cases there cited. It is, however, said, in many cases, that there may be such gross inadequacy of price as to demonstrate imposition, or undue influence, and in such cases a court of equity ought to interfere; but then the inadequacy should be so gross as to *shock the conscience of the chancellor*, and amount itself to evidence of fraud.—See 1 Story's Eq. § 246, and cases by him cited. But I think it might be asked, what inadequacy of price would shock the conscience, or be conclusive evidence of fraud? Suppose it appeared that one had, in consideration of one hundred dollars, or even a less sum, con-

veyed to another a house worth ten thousand dollars, and this was all the proof, would the conscience of the chancellor be shocked? Could he say upon these facts, *without more*, that there was fraud? The party himself may not have thought there was; he may have been influenced by reasons satisfactory to himself, and not by the consideration in money, in making the deed. No court, I apprehend, professing to be governed by the common law, could, in the case supposed, set aside the contract, or declare it fraudulent upon the grantor. This supposed case, to my mind, clearly illustrates and proves the rule acknowledged by all English courts, that inadequacy of price *within itself*, and disconnected from all other facts, cannot be a ground for setting aside a contract, or affording relief against it. There must be something else besides the mere inadequacy of consideration or inequality in the bargain, to justify a court in granting relief by setting aside the contract. *What this something else besides the inadequacy* should be, perhaps no court ought to say, lest the wary and cunning, by employing other means than those named, should escape with their fraudulent gains. I, however, will venture to say, that it ought, in connection with the inadequacy of consideration, to superinduce the belief that there had been either a suppression of the truth, the suggestion of falsehood, abuse of confidence, a violation of duty arising out of some fiduciary relation between the parties, the exercise of undue influence, or the taking of an unjust and inequitable advantage of one whose peculiar situation at the time would be calculated to render him an easy prey to the cunning and the artful. But if no one of these appears, or if no fact is proved that will lead the mind to the conclusion, that the party against whom relief is sought has suppressed some fact that he ought to have disclosed, or that he has suggested some falsehood, or abused in some manner the confidence reposed in him, or that some fiduciary relation existed between the parties, or that the party complaining was under his influence, or at the time of the trade was in a condition, *from any cause*, that would render him an easy victim to the unconscientious, then relief cannot be afforded; for inadequacy of consideration, *standing alone and unsupported by any thing else, can authorize no court, governed by the rules of the English law, to set aside a contract.* A different rule, it is said, obtains in the civil law in regard to immoveable property;

but we cannot be governed by the civil code when it is opposed to our own; nor is it even necessary to enter into an investigation to see which system of laws, in reference to this question, is preferable.    Our own system must be our guide, and we can follow no other rules.    Looking then to the testimony, can we discover any other trace of fraud than mere inadequacy of price?    If we cannot, the decree must be affirmed.

It was said, in the argument at the bar, that Wilkins acquired his knowledge of the value of the slaves during his agency; that Judge was not apprised of their value, and thus, through the relation of principal and agent, he was enabled to take an undue advantage over Judge, the principal.    But the agency had ceased before the trade, and there is no evidence that tends to show that Judge was not in the possession of all the facts, in relation to his slaves, necessary to enable him to form an accurate opinion as to their value.    He knew the negro woman and her three children before he left Alabama, and was informed that she had given birth to two others during his absence; for the bill of sale shows that he undertook to convey six negroes, giving the names of four, to-wit, the negro woman and her three children which she had before he left, and two other children, whose names were not known or recollected.    Judge was in Austin and saw the house, and could have formed an accurate opinion of its value; at least he was in possession of every fact necessary to form a proper judgment of its worth.    And although the bill alleges that Wilkins made false representations in relation to the condition of the slaves, and that Dunklin was unwilling to surrender them to the complainant, in consequence of which their recovery would be attended with trouble and expense, yet these allegations are fully and completely denied by the answers, and there is no proof to sustain them.    Indeed, independent of the inadequacy of the consideration, or the inequality of the trade, there is no fact proved, in opposition to the answer, that can justify any court in saying that fraud is proved.    It is true the house and lot have been sold under the liens that existed upon it, and thus its entire value has been lost to Judge; but he stipulated to pay and discharge those liens, and his default cannot become the ground of fraud against the opposite party.    I have also duly weighed the testimony of Thomas Judge, as to what took place at Hayneville, after the parties met in Alabama.    It cannot,

according to the rules of evidence, form any ground to impeach the contract. The answers assert that the account, or the supposed debt due from Beattie to the Wilkinses, did not form any part of the trade, but that this debt was left with Judge as the mere agent of Lavender S. and John H. Wilkins. The written evidence afforded by the contract, rather corroborates than discredits the answer; and the deposition of Judge cannot outweigh the answer, corroborated as it is by the written contract, even if the facts to which he deposes could be considered, in any point of view, as forming a just ground from which fraud could be inferred.

After a careful examination of all the proof, I am unable to lay my hand upon any one fact and say, that this fact, in connection with the inadequacy of price, according to the rules we have laid down, is sufficient to justify the court in setting aside the contract. It is true that it would not have been an unpleasant duty to afford the relief sought by the bill, if the proof had warranted us in so doing; for it is manifest that the complainant has suffered serious injury from the contract. But he is legally capable of contracting for himself; there is no want of mental capacity, and he must bear the consequences of his own unwise or imprudent acts.

Let the decree be affirmed.