Green *et al.*, *vs.* Lowry.

J. PERCY GREEN, *et al.*, plaintiff in error, *vs.* JAMES H. LOWRY, defendant in error.

[This case was held up under the Military Order.]

1. An obligation was given by J. Percy Green to Lowry, in February, 1865, for $2,500 in Confederate Treasury notes, for the board of his three sisters, while he was absent in the army, when one dollar in gold was worth forty-six dollars in Confederate notes. On the 18th of November, 1865, before the Ordinance of the Convention for scaling Confederate contracts could have been well understood by the defendants, said Green, who was inexperienced, and his sister Julia, just of age, who boarded with Lowry and was under his protection till about the time it was given, executed a note, payable one day after date, for $450 00, which was to be in lieu of the obligation of Green for the $2,500 Confederate note, which the maker's charge was given in that shape, on the fraudulent representations and false promises of Lowry, that they should have two or three years within which to pay it, and that he having taken advantage of their inexperience and of their ignorance of their legal rights, in obtaining the note brought suit on it in a short time. *Held*, that the Court erred in refusing to allow evidence tending to prove these facts, to go to the jury, and in ordering a verdict for the plaintiff for the amount called for by the face of the note.

2. The note having been executed at a time when the parties did not know it was necessary to place a revenue stamp upon it, and on the fact being ascertained, said Green having voluntarily placed the necessary stamp on the note, and again delivered it to the payee, whereby the government received the revenue to which it was entitled, Green will not be allowed to controvert the fact that the note was legally stamped.

United States revenue stamps. Note given under mistake, etc. Before Judge MILNER. Whitfield Superior Court. November Term, 1868.

In October, 1866, Lowry sued J. Percy Green and Julia Green, his sister, upon their joint and several promissory note for $450 00, payable to Lowry, dated the 18th of November, 1865, and due one day after date.

The record does not show that any plea was filed, but their defence appears by the evidence offered by them. It was agreed that the testimony of the defendants should be heard, and that the Judge should then pass upon its admis-

Green *et al.*, *vs.* Lowry.

sibility, and direct what should be done by the jury. Julia testified that she and her two sisters rented a room from Lowry and furnished their own food for about three weeks, and then boarded with him. Percy was in the army and Lowry said that he would make no agreement as to the price of their board till Percy's return, but that he would charge them no more than the actual cost of their board. When Percy returned Lowry and he agreed that Lowry should have, for said board, $2,500 00 in Confederate Treasury notes, but no time was fixed for the payment. Julia owed Lowry $300 00 in said currency for that amount loaned her about the time of the fall of the Southern Confederacy, and Percy owed him for a jeans overcoat bought about Christmas, 1864. In the fall of 1865 Percy and Julia proposed to Lowry to fix their indebtedness to him in good currency, by arbitration; he said no, but that he knew they were then unable to pay, that he would take their note and not press them for the money. Julia did not believe they owed Lowry the amount of said note, but was mortified because they could not pay him, and wishing him satisfied, and proffering to pay him double what was due, if Lowry would wait two or three years, she relied on his promise not to press them for the money till they had ample time to make it, and signed said note. About Christmas, 1864, Percy delivered to Lowry a slave twenty-eight years old with instructions to sell him and apply the proceeds to the payment of the board, and the remainder to use as he saw proper. Lowry kept the slave till he was emancipated. Julia had a negro boy sixteen years old, who worked for Lowry and a negro girl who did his house work, and a negro man who worked for him one day in each week, while she boarded there. Besides, she turned over to Lowry provisions worth $400 00 in Confederate currency. She admitted signing the note after all the above occurred, and that she knew its contents, but said she did so because she relied on Lowry's promise to wait as aforesaid.

Percy testified, that he learned from plaintiff that the agreement was, that, in consideration of the services of said slaves, he would charge nothing but the cost of the provisions for

said board, and would wait his return to estimate the cost. He returned in February, 1865, and he and plaintiff, by calculation, found that the cost of said provisions furnished to his sisters was $1,250 00 in Confederate currency. Percy thought that sum too small and offered to allow Lowry $2,000 00, but Lowry not being satisfied, was asked to say what would satisfy him, and he said $2,500 00. Percy then gave him his obligation for $2,500 00, payable in Confederate Treasury notes, of which it then took forty-six dollars to buy one dollar in gold. He then turned over to Lowry said negro man, then worth $4,500 00 in Confederate notes, to sell him and pay the obligation, and use the surplus of his price in Lowry's business, subject to Percy's order. Lowry agreed to sell the negro, but did not, and kept him until he was emancipated. Percy's sisters boarded with Lowry only about eight months. In the fall of 1865 they wished to adjust the matter by arbitration, but Lowry declined. They asked him how much he claimed. He said they could not pay then, and it was uncertain when they could, and therefore he must charge more than he otherwise would and asked their note for $450 00, saying if they would give it, they should have their own time in which to pay. Percy, being then unable to pay, having lost all by the war, but his farm, which was dilapidated, and not knowing but that Lowry could enforce the payment of said $2,500 00 obligation, and relying on the promise to wait, signed the note, in satisfaction of that obligation; all the matters alluded to by him and his sister were settled in this note. Percy had never done business for himself, he and his sisters were orphans; he went from college into the army, and there staid till the war ended.

The note specified that it was given " in consideration of the board and other expenses" of the sisters. The Court held that the evidence was inadmissible. Another question remained. The note was not stamped when it was given. Percy did not then know that a stamp was necessary. Some time afterwards Lowry asked Percy to stamp it, and he did so, Lowry saying that he did not know it was necessary, when the note was made. It was shown that that United

States Internal Revenue District had been laid out and the collector therein appointed before the note was given. Under these facts the note was objected to, because it was not stamped when made. The objection was overruled, and Lowry had judgment for the full amount of his note. Said two rulings are assigned as error.

McCUTCHEN & SHEWMAKE, by D. A. WALKER, for plaintiff in error, as to the stamp, cited Chitty on B., 119 ; Act of Congress 3d March, 1865, 1st section Act of 30th June, 1864, section 158 ; as to the admissibility of the parol evidence, on the ground of fraud, Ferguson vs. Carrington, 9 B. and C. 59, Load vs. Green, 15 M. and W. 216 ; Earl of Bristol vs. Welsmon, 1 B. and C., 514, and on the ground of failure of consideration, Story on Pr. N. section 187, Ch. on B., 72–3 ; the facts make a case of usury and the jury should have found the amount of usury ; 26 *Ga.*, 404 ; 28, 526,9, 30 ; Sedg. on M. of Dam., 400.

W. K. MOORE, for defendant in error, as to the parol evidence, cited Parsons on C., 361–2, Kincard vs. Higgins, 1 Bibb's R. 396 ; and said that unless the stamping was fraudulently omitted, the omission did not affect the note, 47 Barb. R., cited in 6 Law Register, 574.

BROWN, C. J.

We are satisfied that the Court erred in withdrawing the evidence from the jury in this case, and ordering a verdict for the plaintiff below, for the full amount of his claim.

The evidence seems to justify the conclusion, that the obligation for $2,500, given upon the Confederate basis, by J. Percy Green for the board of his sisters, was given for as much as Lowry was entitled to, under his agreement with them. And this view of the case is strengthened by the evidence as to the service of the negroes which he received while they were with him.

The next question for consideration would seem to be,

whether the obligation for $2,500, made when one dollar in gold was worth forty-six in Confederate Treasury notes, was a sufficient consideration for the note for four hundred and fifty dollars to be discharged in legal money, which was made by J. Percy Green and his sister Julia, under the circumstances detailed in the evidence. If the promissors were not overreached by Lowry, and there was no fraud or mistake in the transaction, the consideration, however inadequate if not illegal, was sufficient.

The Code, sections 2,700, 2,701, lays down the rule as follows: " Mere inadequacy of consideration alone, will not void a contract. If the inadequacy be great, it is a strong circumstance to evidence fraud; and on a suit for damages for breach of the contract, the inadequacy of the consideration will always enter as an element in estimating the damages.

If the consideration be founded in a mistake of fact or law the promise founded thereon can not be enforced."

In Story on Contracts, section 432, the rule is laid down in this language:

" When the inadequacy of consideration is so gross as to create a presumption of fraud and overreaching, or of unconscientious advantage, taken under circumstances of distress or improvidence, on the one side, or of mental incompetency on the other, the contract founded thereon can not be enforced at law, or in equity; and a Court of equity will, at the instance of the party deceived, interfere and set it aside after it is executed. In cases of gross inadequacy the Court will also take advantage of every circumstance which indicates imposition or improper advantage, to found a presumption of fraud, and thereby to rescind the contract. The mere inadequacy of the consideration is not, however, in such cases, the ground upon which a contract is invalidated, but the *fraud* which is thereby indicated, and however inadequate the consideration may be, yet if the circumstances of the case indicate no unfair advantage on the one side, or no great incompetency on the other, the contract will be valid."

See also, *Warmock vs. Rodgers*, 9 *Ga. R..* 60; James vs. Morgan, 1 Lev. 111; Hough vs. Hunt, 2 Ham. R. 506;

Green *et al.*, *vs.* Lowry.

Williams vs. Powell, 1 Iredell Reps. 460; Hardeman vs. Burge, 10 Yerger's R., 202; Butler vs. Hogkill, 4 Dess. R., 651; Udall vs. Kinny, 3 Cow. R., 590; Johnson vs. Dorsy, 7 Gill R., 269; Edwards vs. Burt, 15 Eng. Law and Equity R., 435; Judge vs. Wilkins, 19 Ala., 765.

There is at least some evidence in this case that J. Percy Green acted under the impression that he was in law bound to pay the $2,500 called for by the obligation, in lawful money, and that he may have acted under a mistake of law, as to the true consideration of the new note. Did he give his free assent to the contract? Was his free will restrained by threats, or other arts? Revised Code, section 2,710. Julia had been boarding with Lowry, the plaintiff, and had been accustomed to look to him as her protector, while her brother was absent in the army. She had just arrived at lawful age. Was she overreached by him? Was he guilty of fraud in inducing them to believe that he would forbear and give time of payment not expressed on the face of the note, when he did not intend to do so? Were the makers of the note under a mistake as to the effect of the scaling ordinance just passed by the Convention? Were they both young and inexperienced, and very much under the influence of Lowry? Was there gross inadequacy of consideration? As the evidence bore upon these points, and as it is the peculiar province of the jury to determine upon the evidence, and to find the facts, we think the Court should have permitted the evidence to go to the jury.

2. As the parties were ignorant of the fact that the law required a revenue stamp to be placed upon the note, and as they got together after that fact was ascertained, and Green placed the stamp upon it, (by which the government received its revenue), and again delivered the note to Lowry, we are of opinion, that Green will not now be permitted to controvert the fact that the note is legally stamped.

Judgment reversed.