[Snead v. Scott, et al.]

# Snead *v.* Scott, *et al.*

## Assumpsit and Trover.

(Decided May 1, 1913.  62 South. 36.)

1. *Executors and Administrators; Allowance to Minors; Growing Crops.*—Crops of annual culture growing at the time of the owner's death were personal property at common law, and, in the absence of a statute, changing their status, the widow or minor children may claim them as a part of the exemptions of personal property.

2. *Same; Necessity of Allotment.*—Where a decedent leaves less than $1,000 in personal property, the title and possession thereof passed to the widow and minor children without administration or the necessity of allotment.

3. *Same; Severance of Possession.*—Where the husband died leaving less than the amount of the widow's exemption in personal property, and shortly after the husband's death the widow removed from the homestead, leaving the homestead and the personal property in the possession of the children, without making any claim thereto, there was a severance of the interest of the widow and minor children, and the children could maintain an action to recover the personalty, in which case the widow was neither a necessary nor a proper party plaintiff.

4. *Same; Exemptions; Prior Mortgage.*—Where the personalty of a deceased was, at his death, subject to a valid chattel mortgage, the rights of the minor children to the growing crops as a part of their exemptions was subject to the lien of the mortgage, although the children gathered the crops by their own labor.

5. *Chattel Mortgages; Mortgagees; Right to Take Possession.*—Where the personal property of decedent in the possession of minor children as part of their exemptions was covered by a valid chattel mortgage which gave the right to seize and sell the property, and the mortgagee brought suit in detinue for the property without joining the children, and seized and sold the property thereunder, he was not guilty of a conversion, or a trespass.

6. *Same; Sale of Property; Excess.*—That the holder of a chattel mortgage received more at the sale of the property than the amount of the mortgage must be shown by one suing in assumpsit or trover therefor.

7. *Same; Duty of Mortgagor; Evidence.*—The mere fact that property of the value of $250 sold for less than $100, will not support a recovery from the chattel mortgagee for the breach of duty owed to the successors in interest of the mortgagor.

8. *Contract; Validity; Drunkenness.*—The drunkenness of a party to a contract makes the contract voidable but not void, if such party was thereby rendered incapable of exercising judgment, and of understanding the proposed agreement.

[Snead v. Scott, et al.]

9. *Same; Evidence.*—The evidence examined and held not to establish a want of capacity in the signor of the contract, it being merely shown that he was drunk on the morning he executed it.

10. *Same.*—In the absence of any evidence of incapacity at the time he made the contract, which was signed in the morning, evidence that the signor seemed to be drinking in the afternoon of the same day, and had been drinking heavily for about six weeks preceding, is not competent.

11. *Cancellation of Instrument; Condition Precedent; Return of Consideration.*—Before the successors in interest of the mortgagor can bring trover for the recovery of the chattels on the ground of the incapacity of the mortgagor at the time it was executed, they must disaffirm the contract and return the consideration or tender it.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Ella Scott and others against J. A. Snead, in assumpsit and trover. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

A. A. Scott died in June, 1909, leaving a widow and six minor children of a former wife. Among other things he left a homestead, a gray mule, and growing crops of corn and cotton, both homestead and personalty being less than the exemptions allowed by law to the widow and minor children. Some months before his death he executed two chattel mortgages to Bruster & Bonner, one for $165, due January 1, 1909, one for $110.90 due November 1, 1909. These mortgages passed by assignments for value to John H. Snead, the first having a credit of $100 at that time, and $100 was paid on the other after assignment to Snead. On March 23, 1909, Scott executed a chattel mortgage to Snead for $286 due October 15, 1909, all three of these mortgages including as security the gray mule and the crops raised during 1909, and contained the usual power to seize and sell for the satisfaction of the debt. On November 2, 1909, Snead filed a detinue suit against the widow and others, but not including any of the minors except Tom Scott, the oldest, and in July, 1910, recovered a

judgment against them for the gray mule, three bales of
lint cotton, 12 bushels of corn, a lot of seed cotton, cot-
ton seed, and fodder, all of which had been taken under
a regular writ of seizure, and replevied by Snead.
Snead's claim to this property was based upon the three
mortgages referred to, and the property was thereafter
sold by him under the powers of sale therein contained.
There is no evidence whatever tending to show what
the property brought at the foreclosure sale, nor is there
any evidence tending to show what was its value, except
that the mule was worth $150 or $160. When the sher-
iff levied the detinue writ he found the property in the
Scott homestead, and it was then in possession of the
Scott children. Mrs. Scott, the widow, left the home-
stead immediately after her husband's death in June,
1909, and thenceforth resided with her father. She
never asserted any claim to the property in question,
and left it with the children, who continuously resided
on the homestead. This suit is brought by the six min-
or children against Snead, and claims $300: First, for
money had and received to plaintiffs' use; second, for
the unlawful taking of the property named; and, third,
for its conversion. Counts 4 and 5 were eliminated by
the charge of the trial court and need not be here notic-
ed. (By amendment Tom Scott's name was stricken as
party plaintiff.)

Besides the general issue, defendant interposed to
each count separately several special pleas. Plea 5, in-
terposed to counts 2, 3, and 4 separately, was as follows:
"That on the second day of November, 1909, defendant
instituted in this case an action of detinue against Mrs.
A. A. Scott, and others for the property here sued for,
and did, upon making affidavit and bond, procure the
issuance by the clerk of said court of a writ of seizure,
and under said writ said property was seized by the

sheriff of said county, and upon making forthcoming bond was delivered to defendant in this suit. And on the 10th day of July, 1910, there was a judgment rendered by this court in favor of this defendant in said writ for the recovery in specie of the property sued for, which said judgment is in full force and effect. And defendant avers that the said Mrs. A. A. Scott was, at the time of the suing out of said detinue suit, the widow of one A. A. Scott, then deceased, and that the property sued for was a part of the estate of said decedent, and then in her possession, and that the said decedent, at the time of his death, was a bona fide citizen of Alabama, and owned less than $1,000 worth of personal property, and less than 160 acres of land, which was worth less than $2,000, and that these plaintiffs were minor children of said A. A. Scott, and that defendant did thereby obtain the possession of said property sued for, and that this is the act complained of in said count, and that there has been no administration upon the estate of said A. A. Scott, and no allotment by any court of any exemptions out of his said estate to his widow and minor children." Plea 6 is the same as 5, except it enumerates the parties to the detinue suit other than Mrs. Scott as being Tom, Hughston, Calvin and B. L. Scott. Plaintiffs demurred to these pleas separately, on the ground that the present cause of action and parties are not the same as in the detinue suit pleaded, and that a recovery therein against Mrs. A. A. Scott is not binding on plaintiffs in this court. The demurrer was sustained, and that action is assigned for error.

On the trial the only important issue in dispute was whether the plaintiff's father had mental capacity to execute the mortgage to Snead, the contention being that he was drunk at the time, and also that he did not go to Snead's store on March 23d; and on this issue

[Snead v. Scott, et al.]

plaintiffs were allowed to show that their father was drunk on the morning he went to Boaz and executed the mortgage, which was alleged to have been done at 10 a. m., that in the afternoon he seemed to be drinking, and that in the afternoon at home he was drunk, and had been drinking heavily for five or six weeks before that day.

STREET, ISBELL & BRADFORD, for appellant. The death of Scott and the finishing of the crops by his children did not affect the security of appellant's mortgages.
—*Marx v. Nelms*, 95 Ala. 304; *Naftel v. Osborn*, 96 Ala. 623; *Walker v. State*, 111 Ala. 29. Under the facts in this case, the minors could not maintain this suit.—Sec. 4202-3, Code 1907; *Langford v. Lee*, 119 Ala. 248; *Walker v. State*, 111 Ala. 29. It follows that refused charge 5 should have been given, and that assignments of error 32-3 are each well taken. At common law growing crops are personal property, and upon the death of the owner go to the personal representative as against the heir, and our statute has only changed the persons entitled thereto.—*Blair v. Murphy*, 81 Ala. 454; *Mitchum v. Moore*, 73 Ala. 547; *Walker v. State, supra.* Therefore, charges 7 and 8 should have been given, and assignments 33-4 are well taken. For the same reason and on the same authority, refused charges 1, 2, 3, and 4 should have been given. The fact of the abandonment by the widow of the homestead was clearly incompetent, and insufficient to show an abandonment by her of her interest in the personal property, and hence, the affirmative charge should have been given.—1 Cyc. 5. The special plea was a complete defense.—14 Cyc. 265; 35 Cyc. 1658; 87 Am. Dec. 632. The widow was therefore a necessary, as well as a proper party.—*Frank v. Myers*, 97 Ala. 437; *Lebeck v. Ft. Payne Bank*, 115

Ala. 453; 22 Enc. P. & P. 156. Snead's right to take the property without legal process and to sell it cannot be doubted if it was done peaceably and without force.—*Street v. St. Clair,* 71 Ala. 110; *Ala. Bank v. Barnes,* 82 Ala. 620. The evidence of drunkenness after signing the contract was not admissible for any purpose.—*Murdock v. State,* 68 Ala. 567; *Butler v. Henry,* 48 Ala. 551; 16 Cyc. 1059; 26 Cyc. 879. On these authorities it must be held that the proof of drunkenness was insufficient to avoid the contract.—*Roden v. State,* 136 Ala. 89; *Wright v. Waller,* 127 Ala. 557.

McCord & Orr, for appellee. No brief reached the Reporter.

SOMERVILLE, J.—Crops of annual culture, left growing and ungathered at the time of the owner's death, were at common law regarded as personalty as between the personal representative and the heirs.— *Blair v. Murphree, Adm'r,* 81 Ala. 454, 2 South. 18; *Mitcham v. Moore,* 73 Ala. 542, 547; *Marx v. Nelms,* 95 Ala. 305, 10 South. 551. Their status as personalty has not been changed by our statutes, and the widow and minor children may claim them as part of their exemptions of personal property.

When the decedent leaves less than $1,000 of personalty, including growing crops as here, the title and possession pass to the widow and minor children without administration or allotment. In all cases the *actual* possession of such exemptions goes to the widow, who holds not alone for herself but also as *trustee* for the minor children.—*Lanford v. Lee,* 119 Ala. 248, 254, 255, 24 South. 578, 580 (72 Am. St. Rep. 914). "The social relation of family not existing, the minor child or children have the rights which they would have if the social

[Snead v. Scott, et al.]

relation existed and they were 'leaving the family.' The exemption, nor any part of it, having been applied to their maintenance, nor occasion for its application existing, they would be entitled to share in the exemption equally with the widow."

It here appears that the widow left the family homestead, where the children remained, very soon after her husband's death, thereby severing the family relation. She left the property here in question with the children without making claim thereto, and the latter completed and gathered the crops, and were in possession of the mule and crops when they were seized under the detinue writ at the suit of Snead. Under these conditions it must be presumed that there was a severance of the interests of the widow and of the children with respect to the exempt property to which they were jointly entitled, from which it follows that the children were entitled to maintain this action by guardian or next friend, for the enforcement of their property rights, and the widow was neither a necessary nor proper party plaintff. The rulings of the trial court in this respect were free from error.

But the fact that plaintiffs completed and gathered the crops by their own labor did not impair prior liens or charges imposed thereon by the decedent in his lifetime.—*Naftel v. Osborn*, 96 Ala. 623, 625, 12 South. 182. Their estate was subject to the several mortgages held by defendant as assignee, or as original mortgagee, if they were valid instruments, to the extent of any balances due on the debts thereby secured, and subject also to seizure and sale for their satisfaction under the powers therein granted.

The evidence was without dispute that the two mortgages assigned to defendant by Brewster & Bonner were valid instruments, and that $65 was due on one, and

[Snead v. Scott, et al.]

$10 on the other, when Snead instituted the detinue suit, and also when he foreclosed the mortgages by sale under power.   Hence, although Snead's recovery of a judgment in detinue against Mrs. A. A. Scott, Tom Scott, and others, cannot bind these plaintiffs because they were not parties, and are not in privity with parties thereto, Snead's seizure of the property, whether with or without legal process, and his sale of the property under the powers named, were lawful acts, and he was guilty of neither trespass nor conversion.   The trial court erred in refusing to give for defendant the general affirmative charge as requested by him in writing on the counts in trespass and trover.

The evidence affords no hint whatever as to the amount realized by Snead at the foreclosure sale, and there is no presumption, either of law or of fact, that the proceeds of the sale equaled or exceeded the mortgage debt.   So there was no evidence upon which plaintiffs could have recovered under the common count for money had and received to their use, and defendant was therefore entitled to the general affirmative charge on that count, and on the whole case, and its refusal was error.   If Snead received proceeds in excess of what was lawfully due to him on the mortgages, including lawful charges, he was of course liable to plaintiffs for that excess, but the burden was on plaintiffs to show a definite excess as a basis for their recovery, even assuming that the last mortgage (to Snead) was subject to avoidance by reason of the mortgagor's intoxication.

It is true that the mule was shown to be worth $150, and true that the other property was probably worth about $200 additional.   This being so, a sale of it for less than $100 might have been accompanied by such misconduct on the part of the mortgagee or his agent as to support an action on the case for breach of the

[Snead v. Scott, et al.]

duty owed to the mortgagor or his successors in interest in that regard.—7 Cyc. 109, d. But there was neither pleading nor proof to support such a recovery.

The drunkenness of a party at the time of making a contract may render the contract voidable, but it does not render it void.—*B. R. L. & P. Co. v. Hinton,* 158 Ala. 470, 48 South. 546; *Oakley v. Shelly,* 129 Ala. 467, 29 South. 385; *Wright v. Waller,* 127 Ala. 557, 29 South. 57, 54 L. R. A. 440. To render it voidable it must be made to appear that the party was intoxicated to such a degree that he was "incapable of exercising judgment, understanding the proposed engagement, and of knowing what he was about when he entered into the contract sought to be avoided."—*Wright v. Waller, supra.* Of course where drunkenness is superinduced by the other party, with fraudulent intent, a less degree of incapacity may suffice to avoid the contract.

On the issue of the incapacity of plaintiffs' father, by reason of drunkenness at the time, to make the mortgage to Snead, proof merely that he "was drunk" on the morning the mortgage was executed had no tendency, per se, to show that he was without contractual capacity. There must be some evidence of a resultant condition indicative of that extreme impairment of the faculties which amounts to contractual incapacity.

Nor was the mortgagor's drunkenness on the afternoon of that day, nor the fact that he had been drinking heavily for six months prior thereto, competent evidence on this issue in the absence of some evidence of incapacity by reason of drunkenness at the time he made the contract, even if such evidence of remote drunkenness were in any case admissible.

If the mortgagor executed the mortgage in question, whether drunk or sober, it is to be presumed, prima facie, that he received the consideration, viz., the value

of $286. If he, or his successors in interest, elected to disaffirm the contract on the ground of his contractual incapacity, by reason of his alleged drunkenness, a condition to such disaffirmance was the return to mortgagee of the consideration received from him.—*B. R. L. & P. Co. v. Hinton,* 158 Ala. 470, 475, 48 South. 546. Nor could they, without a previous disaffirmance of the contract, accompanied by a tender of the consideration received and retained, maintain any action against the mortgagee founded upon the alleged invalidity of the mortgage contract.

The trial court proceeded in evident disregard of the foregoing principles, and for the errors pointed out the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, MCCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur.