# Continental Casualty Co. *v.* Cunningham.

## *Assumpsit.*

(Decided May 21, 1914. Rehearing denied July 25, 1914.
66 South. 41.)

1. *Insurance; Accident; Intentional Act of Third Person.*—Where a party had intelligence enough to understand the nature and consequences of his act, and the act was voluntary and resulted in physical injury to the person of the insured, such injury was the result of an intentional act within the policy limiting liability for injuries caused by the intentional act of another.

2. *Same.*—Where the policy limited liability where the injury resulted from the intentional act of a third person, and the evidence showed that the insured was shot by a third person undisputedly, and there was evidence that at the time such third person was drunk, and also evidence as to the degree of his drunkenness, the question of his capacity to do an intentional act was for the jury.

3. *Same.*—Where insured was shot by a third person who was fleeing from arrest and who shot at every one interfering with his flight, his act in shooting insured, a police officer attempting to prevent his flight, was an intentional act to kill insured, whether insured was known to such third person, or whether knowing him, such third person mistook him for someone else whom he intended to. shoot, within the policy limiting liability for the intentional act of a third person.

APPEAL from Calhoun Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by Mary Bee Cunningham against the Continental Casualty Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The assured was a police officer of the city of Anniston, and was shot and killed by one McGuffin, under the following circumstances: On Sunday afternoon, June, 1911, the Anniston chief of police, accompanied by the sheriff, went into the house of McGuffin to arrest him. He was sitting on the porch with an army rifle across his lap and his pistol in his hand. When the chief of police accosted McGuffin, he raised his gun and fired,

whereupon the chief began firing, and both emptied their guns at each other. The officers then retired, the chief being wounded, and McGuffin also went off in another direction. Other officers pursued him, and he carried on a running battle, loading and firing at his pursuers. After going several blocks, he was seen by Policemen Cunningham and Dashwood, and Cunningham went around in front of McGuffin, and, when within about 15 feet of him, threw up his hands, saying: "Hold on, friend; wait a minute." Thereupon McGuffin raised his gun, aimed directly at Cunningham, and shot him through the head. Dashwood who had remained about 40 yards away, fired at McGuffin as he walked away, and McGuffin returned his fire at intervals when the officer exposed himself to view. As McGuffin proceeded, he saw an automobile, towards which he ran firing his pistol. Its occupant got out, and McGuffin got into the machine, and, while attempting to start it, was shot and captured. A number of witnesses for plaintiff testified as to McGuffin's condition at or about the time of the killing, stating variously that he looked like he was drinking, he was drinking some, he was pretty full, was staggering, talked like a drunken man, looked like a drunken man, appeared to be drinking pretty heavy, from the way he talked there, and the way he was acting. There was also evidence of drunken conduct by McGuffin shortly before the incidents which led up to the killing of Cunningham. The complaint avers that insured was accidentally shot, while defendant pleads that he was shot by the intentional act of McGuffin.

The policy provides as follows:

Part VI—B. If any of the losses covered by this policy (1) where the injury causing the loss results wholly or in part from voluntary exposure to unnecessary or obvious risk of injury, or from the intentional act of

[Continental Casualty Co. v. Cunningham.]

the insured or any other person, * * * then * * * the amount payable to be one-fifth of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding.

The only question involved as to defendant's liability is whether or not it is limited under the quoted provision to one-fifth of the face of the policy. On the issue submitted by the trial court to the jury, their verdict was for plaintiff for the full amount of the policy. The material assignments of error present for review the propriety of the several charges given for the jury at the instance of plaintiff, and the refusal of a number of charges requested by defendant, all of which sufficiently appear from the opinion.

KNOX, ACKER, DIXON & STERNE, and M. P. CORNELIUS, for appellant. A man's act in killing another is not rendered unintentional by reason of the fact that he does not know who his victim is.—*Orr v. Travellers I. Co.,* 120 Ala. 647; 8 S. W. 570; 88 Fed. 38; 112 N. W. 1065; 61 Ill. App. 565; 127 U. S. 661; 102 S. W. 773; 124 S. W. 331; 65 Mich. 545. The intoxication of the assailant would not render his acts unintentional.— *Englehart v. State,* 88 Ala. 100; *Dotson v. State,* 62 Ala. 141; *Stein v. Stae,* 37 Ala. 137. There was no evidence that McGuffin was too drunk to form a design.—*McGuffin v. State,* 59 South. 635.

WILLETT & WILLETT, and BLACKMON, MERRILL & WALKER, for appellee. Cunningham was accidentally killed within the terms of the policy here sued on.—*Equitable I. Co. v. Osborn,* 90 Ala. 201; *Nat. L. I. Co. v. Lackey,* 160 Ala. 178; 59 Am. St. Rep. 474; 42 L. R. A. 189; 127 U. S. 661. The duty was not on plaintiff to negative

death or accident from the accepted causes embraced in the policy, she having made out a prima facie case under her complaint.—55 L. R. A. 538; 4 L. R. A. (N. S.) 636; 142 U. S. 116; 1 Cyc. 290. The presumption of the law is that McGuffin's act was not intentional, as suicide and murder are never presumed.—1 Cyc. 289 and cases cited; *Standard L. I. Co. v. Jones,* 94 Ala. 434; *Pumphrey v. State,* 156 Ala. 103. Insurance policies are construed most strongly against the insurer, and in favor of the insured.—*National L. I. Co. v. Lokey,* 166 Ala. 174; 54 Am. St. Rep. 900; 120 U. S. 742.

SOMERVILLE, J.—The primary question presented by this appeal is upon the interpretation and construction of that clause of the insurance policy which limits the amount payable thereunder to one-fifth the face of the policy "where the injury causing the loss results wholly or in part * * * from the intentional act of the insured or any other person."

What is an "intentional act" may seem a matter of very simple solution to the intelligent layman, but to the judge who is familiar with the learning of the books, and who ventures into the metaphysical subtleties which incumber judicial definition, the question is full of difficulty.

In its present application, the phrase ought to be given that simple and common sense meaning which the parties to the contract intended it should express.

Obviously, we think, this meaning is not to be determined upon a consideration merely of the criminal responsibility of the actor, nor of his moral accountability according to the refined principles of psychology.

If the actor has intelligence enough to understand the physical nature and consequences of his act, and, without the compulsion of an irresistible physical force or .

[Continental Casualty Co. v. Cunningham.]

of an irresistible insane impulse, consciously directs his action so that the injury of the insured is the natural or probable consequence thereof, then that injury is the result of an intentional act. Of course, the injury of the person must be intended, as well as the act which causes such injury.—*Orr v. Travelers' Ins. Co.,* 120 Ala. 647, 652, 24 South. 997. But it must always be presum ed that injury which is the natural or probable result of the conscious and voluntary application of unlawful force to the person of another was the intended result of that action.

It follows, from what we have said, that either the insanity or the drunkenness of an actor may be of such a degree as to lead to the conclusion that an act in question was not his intentional act.

Where, as here, the evidence tends to show not only the drunkenness of the actor causing the injury, but also the degree of his drunkenness, and exhibits also contemporaneous conduct of an equivocal character, his capacity to do an intentional act is very clearly a question of fact for the jury.—*Armor v. State,* 63 Ala. 173; *King v. State,* 90 Ala. 613, 8 South. 856. See, also, *Snead v. Scott,* 182 Ala. 97, 62 South. 36, 39. The trial court properly submitted this issue to the jury. But the capacity of McGuffin, the slayer of the insured, to form a specific intent to kill him, is not an accurate test of his capacity to do an intentionally injurious act; nor was the entertainment of such an intent by McGuffin an essential element of an intentional injury to the insured —as seems to have been stated to the jury by the trial judge.

In a number of charges given at the instance of plaintiff, and also in his oral charge, the trial judge instructed the jury in effect that the killing of Cunningham, the insured, by McGuffin, was not intentional unless Mc-

Guffin shot and killed him knowing him to be John L. Cunningham; and also that, if McGuffin shot him believing him to be some other person, the restrictive provision of the policy was not applicable, and plaintiff was entitled to recover the full amount of the insurance.

We are indebted to the briefs of counsel for a full and helpful discussion of this theory of the case. Upon very thorough consideration we are entirely convinced of its unsoundness. We find no warrant in the language of the policy for such narrow and exacting construction of the phrase "intentional act." We think it is wholly immaterial whether or not Cunningham was known to McGuffin, or whether, knowing him, McGuffin mistook him for some one else whom he intended to shoot. If in fact, having the requisite mental capacity, he intended to shoot the human being who accosted him and threatened to obstruct his flight, his act was an intentional act, and the killing was an intentional result, no matter what he may have supposed was the name or personal identity of his victim. Such a shooting is in no sense accidental so far as the assailant is concerned, and it falls within the restrictive language and purpose of the contract.

We infer that the trial judge was influenced to his conclusion by the case of *Utter v. Travelers Ins. Co.*, 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913. The principle of that case is illustrated by the first headnote of the report: "An accident insurance policy contained a condition exonerating the insurer from liability, if the death of the assured was the result of design on the part of the assured or any other person. The assured was shot by an officer; but there was some evidence tending to show that the officer did not know it was the assured at whom he shot and that he did not intend to kill the assured. Held that if this evidence were true it

could not be said as a matter of law that the assured lost his life from the design of another."

Morse, J., writing the opinion, said: "It seems to me that the design intended by the terms of this policy must be the design that intended the actual result accomplished, and not the design of the act itself, which act resulted in the killing of one contrary to the design of the act. If, when Berry fired this shot, he did not know the man he fired at was Utter, and did not intend to kill Utter, it cannot be said that Utter lost his life by the design of Berry."

It might be difficult, if not impossible, to refute the logic of the reasoning upon which the decision in the *Utter Case* is founded. That case, however, is decisively distinguished from the present case by the language of the policy there construed. The liability requirement that the death or injury of the assured should not be the result of design is obviously of narrower import than a requirement (as here) that it should not be the result of an intentional act. If the *Utter Case* is not thus distinguishable from this case, we are constrained to regard it as unsound.

So far as the facts of the present case are concerned —assuming that McGuffin had the mental capacity to do an intentional act—there is no support for the theory that he supposed he was shooting at some particular person other than Cunningham. On the contrary, it clearly appears that he was fleeing from arrest, and that he was shooting at anybody and everybody who interferred with his purpose to get away. Hence the principle of the *Utter Case,* even if abstractly correct, could not be applied in this case. A possible supposition is not the equivalent of a reasonable inference from the evidence.

The views above expressed will be a sufficient guide to the trial court upon another trial. Without noticing in detail all of the instructions given or refused, it may be well to observe that charges 11—a, 15—A, and 15 —B are correct statements of the law applicable to the evidence, and they should have been given as requested by defendant.

For the errors pointed out, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.

