This is an appeal from an order denying appellant Williamson injunctive relief seeking to cancel a deed and to set aside a sale of property from Williamson to the Matthews. We reverse and remand.
The Matthews learned from members of their family that Williamson wanted to sell her home. Her mortgage was in default, and the mortgagee was threatening foreclosure. There was some evidence to the effect that Williamson wanted to get enough equity to help her finance a mobile home. When they went to Williamson's house to inquire about it, Williamson showed the Matthews through the house. Bobby Matthews asked Williamson how much she wanted for it. Williamson told the Matthews to come back the next day. It is at this point that the parties are in disagreement. The Matthews contend that Williamson offered to sell her equity for $1,700, and Williamson contends that she offered to sell her equity for $17,000, and that the Matthews agreed to pay off the mortgage. It is undisputed that on September 27, 1978, the parties went to attorney Arthur J. Cook's office to execute a contract for the sale of the property. The contract of sale stated the purchase price to be $1,800 ($100 increase reflecting an agreement between the parties concerning some of the furniture in the home) plus the unpaid balance of the mortgage. Attorney Cook testified that he read the terms of the sale to both parties.
The parties then met on October 10, 1978, at attorney Larry Keener's office to sign the deed and to close a loan from appellee Family Savings Federal Credit Union to the Matthews so that the Matthews could buy the property from Williamson. Appellee The Brooklyn Savings Bank was about to foreclose the mortgage on Williamson's property. Keener disbursed part of the loan proceeds to Williamson. Williamson signed the deed to the property.
This Court was advised at oral argument that further disbursement of funds has been held up pending final disposition of this appeal.
Immediately after the sale, Williamson became concerned that she had not received her full consideration and consulted an attorney.
Two days later, on October 12, 1978, Williamson filed a petition for injunctive relief alleging inadequate consideration and mental weakness. The trial court granted Williamson a temporary restraining order preventing the sale from being completed, but at a full hearing on the petition for injunctive relief, the court denied Williamson the relief she requested. Williamson moved for and was granted a rehearing and further testimony was taken on the issue of Williamson's alleged mental weakness. Following the rehearing, the court issued a final order, again denying Williamson injunctive relief. This appeal followed.
Williamson's contention of inadequacy of consideration is based upon evidence which she introduced at trial showing a property appraisal of $16,500. Using this figure and deducting the existing mortgage of approximately $6,500, Williamson's equity would amount to $10,000, $8,300 more than the $1,700 she was paid. Williamson contends that she was due $17,000 for her equity, which would result in the property being valued at $23,500 (adding the mortgage of $6,500). In other words, accepting Williamson's first contention, the Matthews should have paid her $8,300 more; accepting the second contention, Williamson should receive $15,300 more. There was also evidence that the credit union appraised the property for $19,500. This would reflect an equity of $13,000. Accepting this figure, *Page 1247 
she should have been paid $11,300 more. Thus, the claim of inadequacy of consideration (and it would seem to be well established) varied from $8,300 to $15,300.
Although it is a fundamental principle of law that inadequacy of consideration is not, by itself, a sufficient ground to set aside a contract for the sale of land, in Judge v. Wilkins,19 Ala. 765, 772 (1851), over 128 years ago, this Court stated that:
 ". . . [I]nadequacy of price within itself, and disconnected from all other facts, cannot be a ground for setting aside a contract, or affording relief against it. There must be something else besides the mere inadequacy of consideration or inequality in the bargain, to justify a court in granting relief by setting aside the contract. What this something else besides the inadequacy should be, perhaps no court ought to say, lest the wary and cunning, by employing other means than those named, should escape with their fraudulent gains. I, however, will venture to say, that it ought, in connection with the inadequacy of consideration, to superinduce the belief that there had been either a suppression of the truth, the suggestion of falsehood, abuse of confidence, a violation of duty arising out of some fiduciary relation between the parties, the exercise of undue influence, or the taking of an unjust and inequitable advantage of one whose peculiar situation at the time would be calculated to render him an easy prey to the cunning and the artful. But if no one of these appears, or if no fact is proved that will lead the mind to the conclusion, that the party against whom relief is sought has suppressed some fact that he ought to have disclosed, or that he has suggested some falsehood, or abused in some manner the confidence reposed in him, or that some fiduciary relation existed between the parties, or that the party complaining was under his influence, or at the time of the trade was in a condition, from any cause, that would render him an easy victim to the unconscientious, then relief cannot be afforded; for inadequacy of consideration, standing alone and unsupported by any thing else, can authorize no court, governed by the rules of the English law, to set aside a contract . . ."
19 Ala. at 772.
Even a total failure of consideration is an insufficient ground for the cancellation of an otherwise valid deed. Ingramv. Horn, 294 Ala. 353, 317 So.2d 485 (1975).
Although in the case at bar there is no proof of suppression of fact, presentation of falsehood, abuse of confidence, fiduciary relationship between the parties, overreaching, or undue influence, the Court in Judge did not limit "this something else" besides mere inadequacy of consideration to these factors alone.
Williamson contends that the "something else" in the case at bar is mental weakness, either due to some form of permanent mental incapacity or due to intoxication. Of course, the contracts of an insane person are absolutely void. Walker v.Winn, 142 Ala. 560, 564, 39 So. 12 (1904). Williamson, however, is not contending that she was insane at the time of the contract, but rather is contending that she had a mental incapacity, which coupled with inadequacy of consideration requires the setting aside of the transaction.
Our rule in such a case is that a party cannot avoid, free from fraud or undue influence, a contract on the ground of mental incapacity, unless it be shown that the incapacity was of such a character that, at the time of execution, the person had no reasonable perception or understanding of the nature and terms of the contract. Weaver v. Carothers, 228 Ala. 157, 160,153 So. 201 (1934).
Our rule regarding incapacity due to intoxication is much the same. The drunkenness of a party at the time of making a contract may render the contract voidable, but it does not render it void; and to render the contract voidable, it must be made to appear that the party was intoxicated to such a degree that he was, at the time of the contracting, incapable of *Page 1248 
exercising judgment, understanding the proposed engagement, and of knowing what he was about when he entered into the contract sought to be avoided. Snead v. Scott, 182 Ala. 97, 104, 62 So. 36
(1913). Proof merely that the party was drunk on the day the sale was executed does not per se, show that he was without contractual capacity; there must be some evidence of a resultant condition indicative of that extreme impairment of the faculties which amounts to contractual incapacity. Snead v. Scott, supra.
The burden was therefore cast on Williamson to show, by clear and convincing evidence, that she was incapable, at the time of execution, of executing the contract for sale and of executing the deed. Snead v. Scott, supra.
We hold that Williamson met this burden. The testimony elicited at trial by Williamson's attorney charted a history of aberrative behavior. A Mrs. Logan, Williamson's mother, provided lengthy testimony about her daughter's past aberrations. Additionally, Dr. Fredric Feist provided expert testimony regarding Williamson at the rehearing. He stated that she showed signs of an early organic brain syndrome due to her excessive drinking, that she had emotional problems, that he thought that some of her brain cells were destroyed, and that her ability to transact business had been impaired.
Indulging the usual presumption due the trial court, we nevertheless hold that, under the facts of this case, it appears to us that Williamson was not, at the time of execution, capable of fully and completely understanding the nature and terms of the contract and of the deed. Cross v.Maxwell, 263 Ala. 509, 83 So.2d 211 (1955). Williamson's contention that she was intoxicated supports this holding. Testimony was admitted from various witnesses to the effect that Williamson had a history of drinking, that she still had the problem at the time she executed the contract, and that she had in fact taken a couple of drinks before leaving for the meeting in attorney Arthur Cook's office. We do not hold that Williamson was so intoxicated as to render her incapable of contracting. However, numerous factors combine to warrant the conclusion that she was operating under diminished capacity. Testimony showed that Williamson's capacity to transact business was impaired, that she had a history of drinking, that she had been drinking the day she conducted negotiations, and that she had an apparent weakened will because she was pressured by the possibility of an impending foreclosure. Moreover, Williamson made complaint to an attorney only hours after the transaction. These factors are combined with a gross inadequacy of consideration.
No mitigating factors exist to the contrary. No right of any intervening third party is involved. Further disbursement of the loan proceeds has been frozen until final disposition of this appeal. No hardship is worked upon any party.
Although the evidence was presented before the trial court ore tenus, and in such a case where there is evidence to support the trial court's judgment, this Court will not ordinarily reverse that judgment unless there is a showing of plain and palpable error or manifest injustice [Terry v.Buttram, 368 So.2d 859, 860 (Ala. 1979)], we consider that the record supports a finding in this case of such manifest injustice as to require a reversal of the judgment.
We recognize that two able and conscientious attorneys handled parts of the transaction. They are in no wise responsible for, nor were they aware of, the factors which prompt us to require a reversal of this case.
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur. *Page 1249