Steve Ziolkowski, Appellee, v. Continental Casualty Company, Appellant.

Gen. No. 36,226.

Opinion filed April 11, 1933.

GEORGE C. BLISS, for appellant.

PEDEN, MURPHY & RYAN, for appellee; JOHN C. MELANIPHY and GERALD RYAN, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant in assumpsit as beneficiary under an accident insurance policy issued by defendant to one Joseph Sarnouski. The case was tried by the court, without a jury, and the issues were found for plaintiff and damages were assessed in the sum of $2,645. Defendant has appealed from a judgment entered upon the finding.

The declaration consisted of one count and contained a copy of the contract of insurance. Defendant filed a plea of the general issue and two special pleas, the first special plea alleging "that the injury causing the loss of life of insured resulted from an intentional act of insured or some other person"; and the second alleging "that the injury causing the loss of life of insured resulted from an intentional act of another person, to-wit, a stab wound, which assault was not committed upon the assured by such other person for the sole purpose of burglary or robbery and which assault was not incurred by insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby," etc. Plaintiff filed replications to the two special pleas. This was the second trial of the cause. In the first there was a finding and judgment in favor of plaintiff and upon appeal to this court we reversed the judgment and remanded the cause. (See *Ziolkowski v. Continental Casualty Co.,* 263 Ill. App. 31.)

The part of the policy upon which defendant relies for its defense reads as follows: "Part V. Not Covered. This policy does not cover any loss . . . (3) if the injury causing it results from the intentional act of the Insured or of any other person excepting, however, assaults committed upon the Insured for the sole purpose of burglary or robbery and also excepting assaults incurred by the Insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby. . . ." Upon the trial plaintiff introduced in evidence a stipulation of facts, which will be found in our former opinion, the contract of insurance and a letter sent to plaintiff's attorney by defendant company, which will also be found in our former opinion. Plaintiff then rested. Defendant offered in evidence an affidavit of one Peter Kulik, which will be found in our former opinion, and which was

part of the proof submitted to defendant by plaintiff in support of his claim. Defendant, in the instant trial, also introduced the following evidence which was not offered in the first trial: Vincent Starybrat testified that at the time in question he was on a northbound street car and when it reached the corner of 84th and Burley he "saw two Mexican fellows" running east on Buffalo avenue, and that as soon as the car "got between Buffalo avenue and Burley avenue about 100 feet from the corner I seen a man laying on the ground between the sidewalk and the curbstone. I got off the car and went to help the man. As soon as I do that, a fellow, a Mexican, right by my garage ran away, and there was another one had a hatchet and one a big pipe. They were going after that man. That man that run away took a bunch of bricks and throw them through the window. The Mexican threw the bricks through the restaurant window and at that time a man was lying on the ground there. This restaurant is about 100 feet from the corner of Burley and 84th. The next thing I did was to run away from there. I went upstairs in garage and called up the station. I saw three Mexicans. One stayed on southwest corner and pointed to these two fellows what to do. They were throwing bricks and rocks and everything through the window in the restaurant. I did not observe as to what was done to the man who was lying on the street. I heard him scream, that is all." Walter Puchalski testified that he recalled when Joseph Sarnouski was stabbed by a Mexican; that he then had charge of his brother's restaurant at 3245 East 84th street, between Burley and Buffalo avenues; that there were about four people in the restaurant at the time; that one of them was Casmer Pryzbylski, a Polish fellow; that Joseph Sarnouski and Peter Kulik were not in there at any time; that Pryzbylski was looking out of the window and called to the witness to come down, "that

someone was chasing them outside. I went to the window and saw a lad fall down right in front of the place right off the sidewalk. This was Peter Kulik. I did not see anyone else on the street just then. Later saw a man in the same place. Pryzbylski and I walked out and brought this lad Kulik in. After we brought him in there was a bunch of house bricks come flying through the window of the store. Sarnouski had fallen down almost in the same place Kulik did. I didn't see Sarnouski fall down. Mexicans threw the bricks through the restaurant window. Kulik and Pryzbylski were of Polish extraction.'' Dennis O'Keefe, a police officer whose beat was in the neighborhood in question, testified that it was made up ''mostly of Polish and there were quite a number of Mexican families that had moved in there. I had occasion to go to 84th and Burley along about midnight, February 30th, with reference to the stabbing of Joseph Sarnouski. I got there shortly before midnight. I was informed at the station that there was trouble there earlier in the evening. When I got there I found a man lying on the street in front of a sandwich shop and another man lying behind the counter in the same shop. The man lying behind the counter was Peter Kulik and the man in the street was Joseph Sarnouski. I had them moved to a hospital.''

The court found, as a fact, ''that the assault upon insured which resulted in his death was not incurred by insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby,'' and plaintiff does not question this finding. It is conceded, of course, that the assault was not committed for the sole purpose of burglary. Defendant contends that the undisputed evidence establishes that the act of the Mexican who stabbed Sarnouski was intentional, and that the evidence also establishes that the assault and killing was not for the sole purpose of robbery, and that Part V of the policy does not cover

a loss of life under such a state of facts. Plaintiff contends that "the assault was not intentional within the meaning of the word (intentional) as used in insurance policies," and further that "the defendant did not prove that the assault, even if an intentional act, was not for the sole purpose of robbery." Plaintiff argues that "in the case at bar it is admitted that the assured did not know the Mexicans. Under the foregoing authority (*Mah See v. North American Acc. Ins. Co.*, 190 Cal. 421, 213 Pac. 42), if the Mexicans mistook the insured to have been a participant in the affair early in the evening, plaintiff would still be entitled to recover. Furthermore, it was incumbent upon defendant to prove the Mexicans actually intended to kill the insured. . . . Even assuming, for the purposes of argument, that the Mexicans were looking for some one who participated in the melee earlier in the day—and came upon the insured—an assault under the mistaken impression that the insured had participated in the earlier affair would not defeat recovery under the policy." Defendant argues that "the fact that insured and Kulik did not know the Mexicans would make no difference if the act of stabbing was an intentional act of the Mexican. All that was necessary for defendant to prove under the allegations in the second plea was that the injury which caused the loss of life of insured resulted from the intentional act of another person. It was not necessary for defendant to prove that the Mexican intended to kill insured, nor was it necessary for defendant to prove that the intentional act of the Mexican was directed against someone he knew or had any particular grievance against."

In *Continental Casualty Co. v. Cunningham*, 188 Ala. .159, 66 So. 41, the policy provided that "where the injury causing the loss results wholly or in part . . . from the intentional act of the insured or any other person . . . then . . . the amount payable thereunder would be one-fifth of the amount which

otherwise would be payable under the policy." In reversing a judgment for the full amount of the policy the court said:

"What is an 'intentional act' may seem a matter of very simple solution to the intelligent layman, but to the judge who is familiar with the learning of the books, and who ventures into the metaphysical subtleties which incumber judicial definition, the question is full of difficulty.

"In its present application, the phrase ought to be given that simple and common sense meaning which the parties to the contract intended it should express. . . .

"If the actor has intelligence enough to understand the physical nature and consequences of his act, and, without the compulsion of an irresistible physical force or of an irresistible insane impulse, consciously directs his action so that the injury of the insured is the natural or probable consequence thereof, then that injury is the result of an intentional act. Of course, the injury of the person must be intended, as well as the act which causes such injury. *Orr v. Travelers' Ins. Co.,* 120 Ala. 647, 652, 24 South. 997. But it must always be presumed that injury which is the natural or probable result of the conscious and voluntary application of unlawful force to the person of another was the intended result of that action. . . .

"In a number of charges given at the instance of plaintiff, and also in his oral charge, the trial judge instructed the jury in effect that the killing of Cunningham, the insured, by McGuffin, was not intentional unless McGuffin shot and killed him knowing him to be John L. Cunningham; and also that, if McGuffin shot him believing him to be some other person, the restrictive provision of the policy was not applicable, and plaintiff was entitled to recover the full amount of the insurance.

"We are indebted to the briefs of counsel for a full and helpful discussion of this theory of the case. Upon very thorough consideration we are entirely convinced of its unsoundness. We find no warrant in the language of the policy for such a narrow and exacting construction of the phrase 'intentional act.' We think it is wholly immaterial whether or not Cunningham was known to McGuffin, or whether, knowing him, McGuffin mistook him for someone else whom he intended to shoot. If in fact, having the requisite mental capacity, he intended to shoot the human being who accosted him and threatened to obstruct his flight, his act was an intentional act, and the killing was an intentional result, no matter what he may have supposed was the name or personal identity of his victim."

In *National Life Ins. Co. of U. S. v. Coughlin*, 72 Colo. 440, 212 Pac. 486, the exclusion clause provided that the policy did not cover injuries, fatal or non-fatal, which were caused wholly or in part by the intentional act of another person, and the stipulation of facts showed that the insured was on or near the premises of one Elizabeth Haskett, that some time during the evening she heard someone near the premises and thereupon she went to the back door of her home and fired her revolver into the darkness to frighten away anyone who might be around, that she did not then see insured nor anyone else, nor did she know that the insured was near, nor did she intend to kill him nor anyone else, but she did intend to fire the revolver, and in so doing she killed the insured. The sole question before the court was a construction of the exclusion provision under the stipulation of facts. In its opinion the court said:

"In this case death resulted 'wholly or in part' from the intentional firing of the shot, though the result thereof was not intended and could not have been foreseen, just as in another case it resulted 'wholly or in

part' from the intentional striking of a blow, though the result thereof was not intended and could not have been foreseen. *Ryan v. Continental Casualty Co.*, 94 Neb. 35; 142 N. W. 288, 48 L. R. A. (N. S.) 524, Ann. Cas. 1914C, 1234. In that case, the only one in point brought to our attention, the same phrase was under consideration by the court. . . . This was an 'injury caused by an intentional act' of Elizabeth Haskett, but it was not 'intentionally inflicted' by her.''

In *Fernando v. Continental Casualty Co.*, 169 Minn. 53, 210 N. W. 634, the policy provided: ''The policy does not cover any loss if the injury causing it results from the intentional act of the insured or of any other person.'' In that case the insured was killed by a shot from a revolver while engaged in a quarrel with a woman. The Supreme Court held that the evidence showed that she intended to shoot the insured and that ''whether she intended to kill, and her plea indicates that she did not, is unimportant. Boone's death was the result of an 'intentional act' within the policy.'' In *Ryan v. Continental Casualty Co.*, 94 Neb. 35, 142 N. W. 288, the policy provided that if the injury causing the loss resulted wholly or in part from the intentional act of the insured, or of any other person, the insurer's liability should be one-fifth of the amount otherwise payable. There the uncontradicted evidence showed that insured was intentionally struck in the face by another person, who did not intend to kill him, and that the assured fell backward, striking his head on the pavement and fatally fracturing his skull, the injury to his face by the initial blow not being serious, and the court held that under the policy and the facts the plaintiff's recovery was limited to $100. (See also *Continental Casualty Co. v. Klinge*, 82 Ind. App. 277, 144 N. E. 246.)

Plaintiff contends that defendant's contention is conclusively disposed of by the case of *Nalty v. Federal*

*Casualty Co.*, 245 Ill. App. 180, wherein the policy provided: ''In the event of death, . . . due wholly or in part to, or resulting directly or indirectly from, injuries *intentionally inflicted upon the assured* by himself or by any other person; . . . —then in any such case referred to in this paragraph, the limit of the company's liability shall be twenty per cent of the amount which would otherwise be payable under this policy.'' The insured, Nalty, and Johnson were police officers. The following is the court's statement of the testimony of the appellee, wife of Nalty: ''Appellee says that soon after midnight on July 21, 1922, she was standing at her window looking down on the street to see if her husband was coming and that she saw him at the hotel corner; that while she was looking at him three men came out of the hotel and as he advanced toward them they began shooting from both hands; that other people were on the corner besides Mr. Johnson and her husband; that the men who did the shooting were facing the people on the corner and shooting at them or in that direction. She says that her husband had no gun in his hand before or after the shooting began; that he was shot three times before he fell and was not shot after he fell and that so far as she knew her husband was not acquainted with the men who did the shooting.'' The court held that the parties contracted with reference to the actual intention of the slayer and not the intention which the law presumes against a wrongdoer, and the court quotes with approval from *Travelers' Protective Ass'n v. Fawcett*, 56 Ind. App. 111, the following:

'' 'The question arises under a contract by which it was stipulated that the association should not be liable on account of injuries *intentionally inflicted on the assured* by any other person. ''Intentional injuries'' inflicted on the assured by some other person, within the meaning of this contract refers to injuries

which the other person actually directed against the insured and intended to inflict upon him. The parties contracted with reference to the actual intention of the person inflicting the injury, rather than such an intention as the law presumes as against a wrongdoer. . . . In such a case if an act is shown which would naturally and reasonably result in injury to some one of several persons, it may be presumed that the author of the act intended to injure some one, but it can not be presumed, as against any one except the author of the act, that he intended the injury for the particular person who received it.' '' (Italics ours.)

The court, in passing upon the testimony, said:

''We cannot say that the court was not warranted in finding that appellant failed to prove that the slayers of the insured actually intended to kill him. The court could reasonably find that their real intention was to avoid arrest and incidentally to injure the officers as an aid to their escape. If the court believed the testimony of appellee in preference to that of Mr. Johnson it could very well find that shooters were firing at or toward a number of persons on the corner and that their fire was not directed especially at the insured.''

In the *Nalty* case the court also cites the case of *Mah See v. North American Acc. Ins. Co., supra,* also cited by plaintiff, wherein the policy contained the following proviso: ''This policy is issued upon condition that the company assumes no liability hereunder should the accident, injury, disability, death, loss of limb or sight, result wholly or in part directly, or indirectly, from injury *intentionally inflicted on the insured* by any person.'' (Italics ours.) The defendant therein contended that the evidence did not support the finding of the trial court that ''it is not true that the death of said Fong Wing was caused wholly or

directly by personal injury intentionally inflicted upon him.'' In its opinion the court said:

''It is apparent from the evidence that the person who did the shooting was at the time aiming at Fong Wing, and that the shots killed him. · He was killed by someone who either intended to kill the said Fong Wing, or who intended to kill some other person and shot at Fong Wing, believing at the time that he was such other person. In the former event, the company clearly would not be liable and its counsel contend that the same result would follow the latter event. They argue that the person killed was the one at whom the shots were aimed, and that when it transpires that he was in fact the insured, it follows that the injury was 'intentionally inflicted on the insured.' We cannot adopt this view. . . . We conclude, therefore, that the concurrence of the three elements is requisite to render the proviso operative: (1) an intention to injure, (2) directed at the insured, Fong Wing, and (3) the infliction of injury upon him. From this it follows that the company is not excepted from liability if the person who shot Fong Wing intended thereby to shoot some other person.''

The court, in passing upon the evidence, said:

''It is apparent from the evidence that the person who did the shooting was at the time aiming at Fong Wing. From this, either one of two conclusions could be drawn, either that the shooter knew and recognized Fong Wing and intended to shoot him, or that the shooter intended to shoot someone else and mistook Fong Wing for that other person. The evidence discloses nothing to indicate whether the shooting was done from close at hand or from a great distance. It does show without contradiction that it occurred after dark; that the street lamps were burning, but that 'it was not very light' at the point where Fong Wing fell. Cases of mistaken identity are of the commonest occur-

rence in every-day human experience even under the most favorable circumstances of light, proximity, and unobstructed vision. Even though it may appear to our minds more probable that the one who did the shooting intended to shoot Fong Wing, and that, therefore, the trial court should have found in favor of the defendant upon this issue, it was not compelled to so find under the evidence.''

Plaintiff also cites *General Accident, Fire & Life Assur. Corp. v. Hymes,* 77 Okla. 20, 185 Pac. 1085; *Newsome v. Travelers Ins. Co.,* 143 Ga. 785, and *Travelers Protective Ass'n v. Fawcett, supra,* but it is sufficient to say, in reference to the same, that in each case there was a proviso that there was no coverage if death resulted from injuries intentionally inflicted on the insured by another person.

After a very careful consideration of the instant question we have reached the conclusion that the contention of defendant that under the undisputed evidence the act of the Mexican was intentional within the meaning and intent of Part V of the policy, must be sustained.

There remains the further question as to whether or not the evidence establishes that the assault and killing was not for the sole purpose of robbery. Defendant admits, as it must, that the burden was upon it to establish this defense, but it strenuously contends that the only reasonable deduction from the evidence is that robbery was not the sole purpose of the assault and that therefore the judgment should be reversed without remanding the cause. While this contention of defendant is not without some force, we have reached the conclusion that justice requires a retrial of this cause. Upon the trial plaintiff relied, apparently, upon his main contention that the assault was not intentional within the meaning of the policy, and did not deem it necessary to introduce any evidence in rebuttal of that

offered by defendant to sustain its defense that robbery was not the sole purpose of the assault, and upon another trial plaintiff may be able to offer additional evidence bearing upon that defense. This is the second new trial awarded defendant, and even-handed justice demands that plaintiff be given another opportunity to meet that defense.

The judgment of the superior court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

GRIDLEY and SULLIVAN, JJ., concur.