508

E. J. Albrecht Company, Appellant, v. The Fidelity and Casualty Company of New York, Appellee.

Gen. No. 38,962.

Opinion filed March 30, 1937.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; BARRY GILBERT and E. DOUGLAS SCHWANTES, both of Chicago, of counsel.

H. L. HOWARD and WILLIAM GREENE, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit on a public liability insurance policy issued by defendant to recover a sum paid in settlement of a judgment entered against plaintiff, as

well as the costs of litigation and attorney's fees incurred in defending the suit. The court sustained defendant's motion to dismiss the complaint for failure to state a cause of action, and plaintiff having elected to stand by its complaint, judgment was entered in favor of defendant. This appeal followed.

The complaint alleges that in the summer of 1932, E. J. Albrecht Company was erecting a bridge over the Desplaines river, near Lyons, Illinois; that in order to protect itself against loss and expense resulting from injuries suffered by persons not in its employ, the Fidelity & Casualty Company of New York, defendant herein, issued a public liability insurance policy covering damages on account of bodily injuries suffered ''as the result of an accident,'' and agreed as well to defend, in plaintiff's name ''every suit, even if groundless, brought against the assured on account of bodily injury or death covered by this policy''; that August 19, 1932, while the policy was in force, James Spelina, Jr., who was not in plaintiff's employ, was struck by numerous shot fired from a shotgun by Ernest Sporry, plaintiff's superintendent then in charge of construction; that Spelina brought suit against plaintiff and Sporry for assault and battery; that defendant was notified of the pending suit but denied liability under the policy and refused to defend, whereupon plaintiff engaged its own counsel, who tried the case; that a judgment was rendered against plaintiff for $12,000, which was affirmed upon appeal on remittitur of $9,000, and ultimately settled for $2,500; that in addition to this sum plaintiff incurred costs, expenses and attorneys' fees, aggregating $4,421.60, for all of which defendant became liable under its policy.

Under the provisions of the policy defendant agreed ''to insure the Assured against loss from the liability imposed by law upon the assured for damages, includ-

ing damages for loss of services, on account of bodily injuries or death alleged to have been suffered, as the result of an accident occurring while the policy is in force, by any person or persons not employed by the Assured, . . . '' and ''to defend, in the name and on behalf of the Assured, every suit, even if groundless, brought against the Assured on account of bodily injury or death covered by this policy, and to pay, irrespective of the limits expressed in the declarations, all expenses incurred by the Company in defending any suit, including all costs taxed against the Assured, the premiums on appeal bonds and release of attachment bonds filed by Assured in such suits, and the interest on that part of any judgment that is not in excess of the applicable limit of this policy.''

The question presented is whether under the allegations of the complaint, Spelina suffered injuries ''as the result of an accident.'' A consideration of this question, on facts pertinent to those here involved, is embraced in some four of five cases heretofore decided in Illinois, Ohio, Mississippi and Wisconsin. The earliest of these is *Briggs Hotel Co. v. Zurich Accident & Liability Ins. Co.*, 213 Ill. App. 334, decided in 1919. One, Eddy, injured while on the sidewalk adjacent to plaintiff's premises, brought suit against the Briggs Hotel Company, in an action of trespass, alleging that the hotel company had committed an assault and battery upon him, inflicting injuries. Under the provisions of a policy similar to the one at bar, the insurance company was notified of the suit but it took the position that the injuries were not such as were covered by the policy, and refused to defend. The hotel company thereupon undertook the defense of Eddy's suit on its own account and expended the amount there in controversy. Later it sued the insurance company for indemnity and recovered the expenses of litigation. The judgment was reversed on appeal, the court hold-

ing that Eddy's suit, alleging a wilful and malicious assault, was clearly not of the character contemplated by the policy, which only indemnified plaintiff against losses "respecting bodily injuries . . . accidentally suffered or alleged to have been suffered," and that "Eddy's declaration, filed in his suit against the Hotel Company, negatives the accidental nature of such injuries by asserting that they were inflicted willfully and maliciously."

Next followed the case of *Commonwealth Casualty Co. v. Headers,* 118 Ohio St. 429 (decided in 1928). The Supreme Court of Ohio, under similar circumstances, held that an insurance company, which had issued a public liability policy to Headers, who operated an auto livery, was not obliged to defend an action brought by one Malacek against Headers for injuries resulting from an assault and battery committed on Malacek by one of Headers' drivers. Characterizing the injury as "a clear case of assault and battery, willfully and intentionally inflicted," the court said it had no difficulty in reaching the conclusion that the damages sustained were not covered by the policy, which indemnified plaintiff only against "accidental" injuries. The basis for the decision and the reasoning of the court in reaching its conclusion, may be found in the following excerpts from the opinion (pp. 432, 433):

"The policy covers accidental injuries, and the term 'accidental' in this policy must be interpreted in the same manner as that term would be interpreted in any ordinary accident policy; that is to say, an injury or death does not occur by accident when it results from willful, intentional, personal violence inflicted by another. The situation is not strengthened any in behalf of the defendant in error by reasoning that anything is an accident that is out of the ordinary and unexpected. There is no doubt that this assault and bat-

512

tery was wholly unexpected, and was quite out of the ordinary, but that does not constitute it an accident. . . . Surely no one would claim that a party holding an ordinary accident insurance policy covering all forms of external accidental injuries could recover under such a policy damages sustained by reason of a willful and intentional injury inflicted by another. That kind of an injury would afford no better ground for a recovery than would an injury self-inflicted.''

In *Georgia Casualty Co. v. Alden Mills,* 156 Miss. 853 (decided in 1930), the court, upon similar facts, reached a different conclusion. From the stipulated facts it appears that the foreman of Alden Mills, and another employee, committed an unprovoked assault on Joseph Pendergraft, who brought suit against Alden Mills for the injuries inflicted, charging assault and battery. The casualty company, which had issued a public liability policy, refused to defend the suit, contending that the injuries were not covered by the terms of the policy. The sole question presented was whether the injuries suffered by Pendergraft were ''accidental'' under the provisions of the policy. In discussing the casualty company's liability the court said (p. 861):

''The question, therefore, is whether a person who has been assaulted and injured by another, without any provocation on his part, has suffered an accidental injury. There is a diversity of opinion on this question among the courts, but the great weight of authority, and we think the better reasoned cases, holds that injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted—that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident.'' (Citing *Fidelity & Casualty Co. v.*

*Johnson,* 72 Miss. 333, *Stephens v. Railway Officials'
& Employees' Acc. Ass'n,* 75 Miss. 84; *Hutson v. Continental Casualty Co.,* 142 Miss. 388; *Holmes v. American Ins. Co.,* 142 Miss. 636; *Provident Life & Accident Ins. Co. v. McWilliams,* 146 Miss. 298; *Great Southern Life Ins. Co. v. Campbell,* 148 Miss. 173.)

In reaching this conclusion the court adopted the reasoning that whether an injury is accidental is to be determined from the standpoint of the person injured, and "if the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental." In answer to the contention of the casualty company that if the policy in question covered Pendergraft's injury it was void, because its effect would be to furnish a motive to insured to violate the law, the court pointed out that Alden Mills did not itself commit the unlawful act upon Pendergraft, although it was responsible therefor under the doctrine of *respondeat superior,* and that since the policy was valid on its face and did not expressly undertake to indemnify Alden Mills against its own unlawful acts, it could not be invalid because its effect was to indemnify insured against the consequences of the illegal or criminal acts of others, without participation on the part of insured. *Taxicab Motor Co. v. Pacific Coast Cas. Co. of San Francisco,* 73 Wash. 631, holding that "one may lawfully insure another against the consequences of such acts [illegal acts] committed by servants and employees, if such acts are not directed by, or participated in, by the insured," was cited to support this conclusion. "If this were not so," said the Washington court, "bonds taken to insure against the misappropriation or embezzlement of funds by employees generally would be void."

Within the year following the decision in the *Alden Mills* case the same question came before the court in

*Robinson v. United States Fidelity & Guaranty Co.,*
159 Miss. 14, and it was urged that the court had not
given due consideration to the cases of *Briggs Hotel
Co. v. Zurich Accident & Liability Ins. Co.* and *Com-
monwealth Casualty Co. v. Headers, supra.* However,
the court adhered to the position it had taken, stating
that these cases were considered and treated as hold-
ing contrary to the doctrine announced in the *Alden
Mills* case, but that in the opinion of the court the con-
clusions reached in its former opinion were in accord
with reason and authority, and should be adhered to.

The precise question recently arose in *Fox Wis-
consin Corp. v. Century Indemnity Co.,* 219 Wis. 549
(1935). The complaint in that case alleged that one,
Earl Ferguson, while rightfully in plaintiff's theatre,
was assaulted by an employee and injured; that when
suit was instituted by Ferguson against the theatre,
the insurance company refused to defend under the
provisions of a policy providing for indemnity for in-
juries accidentally sustained, whereupon plaintiff an-
swered the complaint and defended the suit, with the
result that Ferguson was awarded $300 damages and
costs of suit, which plaintiff paid. The indemnity
company demurred to the complaint on the ground
that it did not state a cause of action. The trial court
sustained the demurrer, but on appeal the order was
reversed and the cause was remanded. In discussing
the terms of the policy, as to whether or not the dam-
ages sustained by Ferguson were accidental, the court
said (p. 551):

"Whether or not an injury is accidental under the
terms used in the policy here involved is to be deter-
mined from the standpoint of the person injured.
The meaning that must be accepted is that attributed
to practically identical words used in a policy described
in *Button v. American Mut. Accident Ass'n,* 92 Wis. 83.
The facts show that the injury to the patron came to

him through force not of his own provocation. From his standpoint, then, the injuries were 'accidentally sustained.' (*Washington Theatre Co. v. Hartford Acc. & Indem. Co.,* 9 N. J. Misc. 1212.) In the absence of some provision in the policy which excludes liability for such injuries, the meaning of 'accidentally sustained' becomes plain and controlling. Damage having resulted because of bodily injuries sustained by a patron of the theatre because of the care, maintenance or use of the theatre, it becomes a liability of the insurer under its contract. The patron, whose injury gave rise to the liability, was assaulted, and, in a sense, the act was unlawful and intentional; still, considered objectively, it occurred without the agency of the patron, and, so far as these particular parties are concerned, the act may be, and legally is to be, termed accidental.'' (Citing *Georgia Cas. Co. v. Alden Mills,* 156 Miss. 853.)

Adopting and amplifying the reasoning of the *Alden Mills* case, the court continued as follows (pp. 551, 552):

''The appellant is subject to the liability for damages flowing from the tortious conduct of its employee. This liability is imposed upon assured by law under the rule of *respondeat superior*. Although the appellant may be held liable for such tort, it cannot be said that it committed the assault, nor that it authorized it. Thus the appellant has not placed itself outside the terms of the policy, and we find no limitation or qualification under which the respondent can escape its liability to the appellant. Respondent agreed to indemnify appellant for loss by reason of liability resulting from bodily injuries accidentally sustained by a patron in appellant's theatre. We do not consider it necessary to enlarge upon the significance of the terms of the policy. We hold that the liability here imposed by law upon appellant for the act of its servant arises out

of the operation of the business just as directly as if some appliance used in connection therewith had failed to function properly, and the patron had been injured because of such failure.''

The Mississippi and Wisconsin cases are based on the theory that both from the standpoint of the employer, as well as the victim of the assault, the occurrence was an accident. They hold that the employer was in no sense the perpetrator of the assault and therefore can be held liable only under the doctrine of *respondeat superior*; that as to the victim of the assault, if it was unprovoked and he was not the aggressor, the occurrence was not the natural and probable consequence of his conduct, and was therefore accidental. Since the decision in the *Briggs* case, courts in Illinois and other States have consistently held that the insured under an accident policy may recover for injuries or death resulting from an unprovoked assault committed upon him, where he was not the aggressor. In *Fidelity & Casualty Co. v. Johnson,* 72 Miss. 233, the assured was hanged by a mob. In a suit brought on an accident policy, insuring him against ''bodily injuries sustained through external, violent and accidental means,'' it was contended by the insurance company that the hanging was intentional, but the court held against the contention, saying:

''In these and all like cases in which death occurs by violent means, external to the man, and against or without intention or concurrence of will on the part of the man, death may probably be called an accident. . . . 'An injury may be said objectively to be accidental, though subjectively it is not; and, if it occurs without the agency of the insured, it may logically be termed accidental, though it was brought about designedly by another person.' . . . There is, upon authority, hardly room for controversy as to the rightfulness of

the action of the court below in refusing to charge the jury that death by hanging at the hands of a mob was not an accident.''

In *Nalty v. Federal Casualty Co.*, 245 Ill. App. 180, a policeman, in the course of his duty, stopped two suspicious looking characters and they shot and killed him. When suit was brought on an accident insurance policy the casualty company contended that his death was not the result of accidental means within the meaning of the policy, but the court held that the shooting was not a result to be expected by deceased and that viewed from the standpoint of the deceased it was accidental. A similar conclusion was reached in *Williams v. Prudential Ins. Co.*, 271 Ill. App. 532, where an insane person provoked a policeman to shoot him, and it was held that his death was accidental be-cause he was legally irresponsible for his conduct.

In *Ziolkowski v. Continental Cas. Co.*, 270 Ill. App. 286, which came to this branch of the Appellate Court several times on appeal, the principal question involved was whether recovery could be had for the fatal stab-bing of insured under an accident insurance policy, and a judgment permitting recovery by plaintiff was ultimately affirmed. (284 Ill. App. 505. Appellate Court affirmed by the Supreme Court of Illinois at the February, 1937, term.) In addition to the foregoing decisions, and others cited by plaintiff, we find it to. be the general rule under the workmen's compensation laws of the various States that an injury resulting from a wilful assault on an employee does not pre-vent the injury from being ''accidental'' within the meaning of the various statutes. (72 A. L. R. 110 and numerous cases therein cited.)

In *Commonwealth Casualty Co. v. Headers, supra,* the Ohio court evidently supported its conclusion that the injuries suffered by Malacek as the result of an assault and battery, wilfully and intentionally in-

flicted, were not accidental upon the theory that "a party holding an ordinary accident policy covering all forms of external, accidental injuries could not recover under such a policy damages sustained by reason of a willful and intentional injury inflicted by another. That kind of an injury would afford no better ground for a recovery than would an injury self-inflicted." Whether or not that is the law of Ohio we are not required to determine, but under the decisions in this State and other jurisdictions the general rule that a person wilfully assaulted may recover under an accident insurance policy where he is not the aggressor, is well established. If Spelina, assaulted by plaintiff's foreman, had carried an accident policy, he would have been entitled, under the rule in this State, to recover for the injuries suffered, on the theory that they were "accidental."

The consequences that may result from the rule and reasoning employed in the *Headers* case are shown by a subsequent decision of the Court of Appeals of Ohio, in *American Casualty Co. v. Brinsky,* 51 Ohio App. 298, 200 N. E. 654, opinion filed in 1934. Brinsky brought suit against Max Meyer, and others, for damages resulting from a collision between Brinsky's truck and one driven by defendants' agent. He charged willful and wanton conduct. Upon trial the court found the issues in favor of plaintiff and specifically held that defendants were guilty of "willful and wanton conduct." Defendants carried liability insurance with the American Casualty Company, qualified to do business in Ohio, and the casualty company's attorneys used the *Headers* case as authority for the contention that the ordinary public liability policy did not cover a case where the injured person in an automobile accident received his injuries as the result of willful and wanton conduct. The insurance company's contention was sustained, and recovery was denied assured.

If a like doctrine were to be adopted in Illinois, it might seriously affect the rights of automobile owners in this State carrying liability insurance under the so-called Illinois "guest law," which requires a guest passenger to allege and prove that his injuries were incurred as the result of wilful and wanton conduct on the part of the owner or driver.

Defendant argues that the facts found in *Spelina v. Sporry,* 279 Ill. App. 376, indicated that Spelina, when shot by plaintiff's superintendent, was in the act of taking away a plank, and therefore the assault upon him by Sporry was not unprovoked. The question in the case at bar is whether the complaint stated a good cause of action, and that question is to be determined from the allegations of the instrument. But even if we were to go outside the record we should be obliged to hold, as we did in *Spelina v. Sporry, supra,* that the assault by shooting in that case was unprovoked, unwarranted and actionable.

After a careful consideration of all the authorities, we have reached the conclusion that the *Alden Mills* and *Fox-Wisconsin Corporation* cases, *supra,* are in accord with reason and the greater weight of authority, and that the losses and expenses incurred by plaintiff in this case come within the provisions of the policy herein. It follows that the order of the circuit court dismissing the complaint and entering judgment in favor of defendant was erroneous. The order will therefore be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.