FLORALBELL AMUSEMENT CORPORATION, Plaintiff, *v.* STANDARD SURETY & CASUALTY COMPANY OF NEW YORK, Defendant.*

City Court of New York, New York County, November 30, 1937.

* On submitted controversy, see 256 App. Div. 221.

1004

*Schechter, Sulzberger & McMahon* [*Myron Sulzberger, Jr.,* and *David Fogel* of counsel], for the plaintiff.

*Alfred T. Tompkins* [*Charles J. Gardella* of counsel], for the defendant.

MADIGAN, J. A question as to coverage under a public liability insurance policy is raised by a motion to dismiss the complaint for insufficiency.

The policy describes the " assured's trade or business " as " motion picture and vaudeville theatre." It covers as to " claims and suits against the assured * * * even if groundless * * * to recover damages arising or resulting from bodily injuries and/or death accidentally suffered or alleged to have been so suffered," by any person other than an employee of the assured, " resulting from the ownership, care, maintenance, occupation or use " of the assured's premises " or from any business operations of the assured * * * therein conducted by the assured."

The nature of the coverage is indicated by the words " accidentally suffered or alleged to have been so suffered." To that coverage the words " accident " and " accidental " in other parts of the policy obviously refer.

In this action the complaint, served by the assured, shows that one Dill asserted that he had been injured in an unprovoked assault committed in the assured's theatre by its manager in furtherance of its business described in the policy, and that defendant in the present action, the insurer, refused to defend the action for assault

brought against this plaintiff, the assured, by Dill. When Dill sued the assured defendant took the position that the policy does not relate to liability for assaults, and that is defendant's contention on the present motion, to dismiss for insufficiency. The complaint in this action also sets forth that the assault alleged by Dill " was in no wise and at no time authorized, consented to, participated in or ratified by the plaintiff or any officer, director or stockholder thereof," and that plaintiff at his own expense successfully defended Dill's action. That action was for an assault pure and simple as appears from the complaint, which in no manner alleges negligence. Dill's complaint is an exhibit to the complaint here.

The present action is brought to recover from defendant, the insurer, the cost to plaintiff, the assured, of defending the claim which Dill prosecuted. It is asserted by plaintiff that such claim was one which the policy required the insurer to defend at its own expense.

Thus it will be seen that the question here is whether a public liability policy such as that issued by defendant to plaintiff relates to liability, or alleged liability, for injuries due to an unprovoked assault committed on a person other than an employee of the assured, without actual direction or participation by the assured and committed by an employee of the assured in furtherance of the business as to which the policy covers.

Apparently that question has not been decided in the State of New York. But see *Raven Halls, Inc.*, v. *United States Fidelity & Guaranty Company* (142 Misc. 454) and *Baron* v. *Auto Mutual Indemnity Company* (247 App. Div. 731).

The law reports of but very few other States indicate decisions directly in point.

In *Westerland* v. *Argonaut Grill* (187 Wash. 437, 439; 60 P. [2d] 228, 229) the Supreme Court of Washington reasons as follows: " An injury may be said, subjectively, not to be accidental, although objectively, it is. Whatever may be said of a bodily injury caused by the kick of a mule or the bite of a snake, as to its being accidental, from the standpoint of the mule or the snake, it cannot be doubted that it would be accidental from the standpoint of the person receiving the injury. The language in the contract in the present case does not purport to cover bodily injuries accidentally *caused* by the assured's employees, but, on the contrary, it covers bodily injuries *suffered* by any person not in the employ of the assured, as the result of accident caused by the assured's employees while engaged in the course of their employment. The injury here came to the respondent through external, unexpected force, not by his choice or provocation, and, as to him, it was accidental."

In *Georgia Casualty Co.* v. *Alden Mills* (156 Miss. 853, 861; 127 So. 555, 557) it is said, in reference to the effect of a public liability policy: " There is a diversity of opinion on this question among the courts, but the great weight of authority, and we think the better reasoned cases, hold that injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted — that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident."

These excerpts from opinions filed in State courts of last resort are not to be misunderstood. It may be urged that, instead of inquiring as to the objects and purposes of the contract from the viewpoint of the parties to the policy, those decisions interpret the contract from the viewpoint of the person who alleges injuries and who is not a party to the policy. But the meaning to be given to the words of the contract is the generally accepted meaning of such words unless it satisfactorily appear that some other meaning was intended; and the court is seeking the meaning of the parties to the agreement when the court seeks to ascertain the generally accepted meaning of the words in the policy. An accident causing bodily injuries or death is something which befalls the person injured. From his standpoint, therefore, it seems natural to define the word " accident." Such definition does not imply an approach other than from the standpoint of the parties to the public liability policy. Moreover, " suffered " is the word of the contract. What was suffered by the person injured or killed? That, the policy itself suggests, is the question to be answered.

If the point of view to be taken is not that of the person injured, a conclusion favorable to the assured would, nevertheless, be indicated. Were the assured a lawyer his mind probably would run to differentiation between liability on the theory of negligence and liability on the theory of assault. But the approach should not be that of an assured who has studied law. What is to be sought on the present application is not a lawyer's understanding of the language employed in the policy, but a layman's. The court should seek to ascertain what the language would indicate to the ordinary buyer of public liability insurance. What meaning ought the insurance company expect the assured to ascribe to its printed policy? It seems fair to say that to him the policy would imply coverage under the circumstances disclosed by the complaint in the present action.

Still other considerations indicate the same conclusion.

For assaults by a dangerous employee or other dangerous person harbored by the assured there might be an action in negligence.

As to such an action it will be conceded that the policy would cover it. Clearly, then, it would not be true to say that under no circumstances whatever would the policy safeguard the assured as to liability to a person assaulted by an employee. The distinction between assaults as to which there would be liability for negligence and assaults from which there could arise no liability for negligence are not distinctions which the ordinary buyer of public liability insurance reasonably could be expected to appreciate from a reading of a policy worded as this contract is worded. If an assault by an employee was to be foreseen by the ordinary reasonably prudent employer, the assured probably would be covered by this policy in relation to an action in negligence based upon such assault. It would be just as much an accident, according to a layman's understanding, if, not being due to willful conduct of the employer, the assault was unexpected, unforeseen and catastrophic from the point of view of the assured. In that connection it is of no moment that all persons are presumed to know the law, for this is an inquiry as to what reasonably would be the view of an assured who did not know the law.

It is said that assaults are willful and that the policy is not intended to shield the assured as to willful acts. That appears to be true in so far as the reference is to assaults actually committed by an assured or committed by the direction of or with the connivance of the assured. (*Sontag* v. *Galer*, 279 Mass. 309; 181 N. E. 182.) But an assault by an employee, an assault not foreseen by the employer, may be as catastrophic to the purse of the assured, the employer, as it is to the body of the person assaulted. Not being willful on the part of the assured, it is, from the point of view of the assured, in the nature of an accident in the course of his business.

Again, personal injuries due to wanton or criminal negligence of an assured may much more closely approach the classification of willful injury than would personal injuries due to an unauthorized assault by an employee.

In this policy there are set forth several exceptions to liability, referred to as " exclusions." Among these specific exclusions is found none against coverage in relation to injury arising out of assault. There is no reason for reading into the policy a further exclusion for which the insurer made no provision.

In *Fox Wisconsin Corporation* v. *Century Indemnity Company* (219 Wis. 549, at p. 552; 263 N. W. 567, at p. 568) there will be found the following: " We hold that the liability here imposed by law upon appellant for the act of its servant arises out of the operation of the business just as directly as if some appliance used in

connection therewith had failed to function properly, and the patron had been injured because of such failure."

In *Georgia Casualty Co.* v. *Alden Mills* (156 Miss. 853; 127 So. 555), referred to above, the suggestion that the interpretation now being adopted is against public policy was discussed at length. It is a far-fetched supposition that coverage against liability for unauthorized assault constitutes an inducement to the assured to encourage assaults by his employees, and with equal force it could be said that public liability insurance encourages negligence on the part of the assured.

Two Illinois cases indicate the trend of decision. The first was decided in 1919. It is the case of *Briggs Hotel Co.* v. *Zurich General Accident & Liability Ins. Co.* (213 Ill. App. 334). It is a decision to the effect that a public liability policy, relating to "bodily injuries * * * accidentally suffered or alleged to have been suffered," does not afford coverage for injuries suffered as the result of "a willful and malicious assault" by an employee of the assured. The second Illinois case referred to above was decided in 1937. It is the case of *Albrecht Company* v. *Fidelity & Casualty Company of New York* (289 Ill. App. 508, 510, 519; 7 N. E. [2d] 626, 627, 630). Two excerpts from the opinion follow.

"A consideration of this question * * * is embraced in some four or five cases heretofore decided in Illinois, Ohio, Mississippi and Wisconsin. The earliest of these is *Briggs Hotel Co.* v. *Zurich Accident & Liability Ins. Co.* (213 Ill. App. 334)."

"After a careful consideration of all the authorities, we have reached the conclusion that the *Alden Mills* and *Fox-Wisconsin Corporation* cases (*supra*) are in accord with reason and the greater weight of authority."

The ruling on the present application to the effect that the complaint is sufficient is contrary to *Commonwealth Casualty Co.* v. *Headers* (118 Ohio St. 429; 161 N. E. 278).

The interpretation now being adopted may imply that the insurer would be required at its own expense to defend the assured whenever a claimant might assert that an employee committed an assault not instigated by the assured; for it may be taken for granted that a person with such a claim will assert that he is the victim of an unprovoked assault. But this is to be regarded as a result of the company's undertaking to defend groundless claims. It is right that the company should agree to defend groundless claims. The insurer would not, however, have to pay out any money to cover damages merely because the claimant might assert an unprovoked assault; for, if the claimant could not prove his allegations he would not have an enforcible claim.

As indicated above, there is coverage when the employee's assault can be charged to negligence of the assured, the employer. It is just as lawful to provide coverage in relation to assaults not actually provoked or committed by the assured and not chargeable to lack of due care on the part of the assured. There is a legitimate risk. It should be specifically excluded if it is not to be covered. The matter should not be left uncertain; and coverage would seem best for both the insurance company and the assured, premium to be adjusted accordingly. In the present instance the basis for calculating premium printed in the policy form was expressly eliminated. A special basis was set forth by other provisions. They are not helpful in deciding this application.

The motion to dismiss the complaint for insufficiency is denied, with leave to defendant to answer within six days after service upon its attorney of a copy of the order disposing of this motion.

Order signed.