## CROSS et al. v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited.

No. 10124.

United States Court of Appeals
Seventh Circuit.

Oct. 19, 1950.

Rehearing Denied Nov. 8, 1950.

A. Charles Lawrence, Max F. Goldberg, Levy, Goldberg & Lawrence, Chicago, Ill., for appellants. Ernest Greenberger, Chicago, Ill., of counsel.

L. H. Vogel, George C. Bunge, R. C. Vogel, Vogel & Bunge, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff Clarence J. Cross has been engaged in the business of cleaning the exterior of buildings since 1927. The plaintiff partnership has been engaged in the same business since 1942. Plaintiffs have had wide experience in cleaning the exterior of

buildings located in Chicago's Loop and elsewhere in that city.

On August 22, 1947, defendants issued to plaintiff a public liability policy of insurance wherein it agreed "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to * * * property * * * caused by accidents which occur during the policy period * * *."

On September 15, 1947, plaintiffs entered into a contract to clean the exterior of the Le Moyne Building at 180 North Wabash Avenue, Chicago. On the following day, by a specific endorsement, the defendant extended the public liability policy hereinbefore described to cover the operations by plaintiffs on the Le Moyne Building.

Plaintiffs attempted to clean the exterior of the building with a solution of muriatic acid, but because of the accumulation of grime for a period of some ten years, this method was not effective. Plaintiffs then obtained permission from the managers of the building to use a solution compounded of one cup of hydrofluoric acid to a five gallon bucket of muriatic acid solution. This solution was applied to the masonry with brushes handled by men who worked on scaffolds. The cleaning solution was then washed off the masonry with a jet of wet steam. The work was customarily done at night.

Hydrofluoric acid has the property of marking or etching glass. To avoid acid damage to windows adjoining the area being cleaned plaintiffs adopted the following protective procedure. Before and during the application of the solution to the walls, and while the solution was being washed off, a jet of steam water, or wet steam, was played upon such windows. Nevertheless, some of the glass in the windows of the Le Moyne Building was damaged by the solution which had been used, and claims for damages were received by the plaintiffs from some of the tenants, and from the agents of the building. One claim was from Horder and Company which claimed damage to merchandise in-side the building where the water and acid mixture had entered the store because the windows were not properly sealed.

The testimony discloses that on several occasions buckets of acid solution were spilled when high winds swung and twisted the suspended scaffolds, and that the spillage splashed against the sides and windows of the building. However, considering the testimony in the light most favorable to defendant, we may assume that the greater part of the damage to the windows occurred when the solution was being applied to or washed from the walls of the building.

Defendant was notified of the claims and was requested to undertake their defense or settlement. Defendant disclaimed liability, except for the Horder claim, stating that the damage was not occasioned by an accident. Thereafter plaintiffs brought this action for declaratory judgment.

■ The district court held that the damage to the windows which gave rise to the claims against the plaintiffs was not "caused by accidents." The basis for such conclusion was that the plaintiffs could have masked the windows in the building by covering them with grease or heavy paper, that the use by plaintiffs of hydrofluoric acid on the building was deliberate and intentional and, therefore, the result of its use was not unforeseen, unexpected, or unusual. The court said it did not think what plaintiffs did to guard against acid damage "was adequate." It is apparent that the trial court applied the test for negligence. We do not think that is a proper test when considering what constitutes an accident under a public liability insurance policy containing the clause hereinbefore quoted.

There is no suggestion in this case that the plaintiffs intentionally and willfully damaged the glass in the windows. Furthermore, there was before the court the evidence of four witnesses, one of whom was entirely disinterested and had nearly 30 years' experience in cleaning buildings, that the use of steam with hydrofluoric solution for cleaning the walls of buildings was customary in the industry, and that the wetting of windows during the cleaning process was the customary protection

against acid damage. In fact the defendant offered no evidence to the contrary. It was shown, however, that the procedure of masking windows is at times used by building cleaners. On cross-examination, Mr. White (the disinterested witness) was pressed by defendant's counsel to say that the masking method was the usual and customary method, but the record shows his reply to be otherwise: "Q. That (masking) is the customary method used by you when you use acid, isn't it? A. No. The customary method is to wet the glass first, and then to wash the building, then wet the glass."

■ The insurance contract here under consideration was executed and issued in Illinois and must be construed in accordance with the law of Illinois. Unfortunately there are very few Illinois decisions to guide our determination of the issues under the facts of the case at bar. The closest case is E. J. Albrecht Co. v. Fidelity & Casualty Co. of New York, 289 Ill.App. 508, 7 N.E.2d 626, 627, where a public liability policy had been issued to a bridge contractor covering damages due to bodily injury suffered as a result of an accident. The superintendent of the construction company injured one Spelina by shooting him with a shotgun. The court said, "The question presented is whether under the allegations of the complaint, Spelina suffered injuries 'as the result of an accident.' * * *" The court quoted, 7 N.E.2d at page 628, from the Georgia Casualty Co. v. Alden Mills case, 156 Miss. 853, 127 So. 555: "* * * 'if the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental.' * * *" The court also quoted at length from Fox Wisconsin Corp. v. Century Indemnity Co., 1935, 219 Wis. 549, 263 N.W. 567, in which opinion it was emphasized that whether or not an injury is accidental under the terms of the policy there being considered is to be determined from the standpoint of the person injured. The court in the Albrecht case considered Briggs Hotel Co. v. Zurich General Accident & Liability Insurance Co., 213 Ill.App. 334, and distinguished it. (The defendant here relies upon the Briggs Hotel Co. case.) The court then concluded with this statement, 7 N.E.2d at page 630: "After a careful consideration of all the authorities, we have reached the conclusion that the Alden Mills, and Fox Wisconsin Corporation Cases, supra, are in accord with reason and the greater weight of authority, * * *."

■ The basis for the decision of the trial court was that plaintiffs intentionally used hydrofluoric acid in the solution and failed to take the precaution of covering the windows with grease or heavy paper. But failure to take a proper or effective precaution does not prove intent to damage. Plaintiffs may have been negligent in not keeping sufficient water on the windows, but the very fact that water was applied to each window negatives any idea that plaintiff intended to damage same. And lacking such intent, the damage was accidental, even though caused by negligence.

■ The insured bought and paid for protection against liability for negligent acts. A policy such as here under consideration covers the risks incidental to the occupation in which the insured is engaged. It is well settled that negligence on the part of the insured which causes or contributes to the injury or damage is not a defense. Ocean Accident & Guarantee Corp., Ltd. of London, England v. McClung, 10 Cir., 84 F.2d 844; Standard Acc. Ins. Co. v. Van Altena, 7 Cir., 67 F.2d 836; 45 C.J.S., Insurance, § 775.

■ We conclude that the claims for damages against the plaintiffs referred to in the complaint are covered by the insurance policy issued by the defendant, and that said defendant is under a duty and obligation to the plaintiffs with respect to such claims and to any suits or actions arising therefrom.

■ Plaintiffs claim that they are entitled to reasonable attorney fees under Ill. Rev.Stats., Ch. 73, Sec. 767, which provides that where an insurer has refused to pay the amount of a loss and the insured brings suit against it, the court may allow to the insured, if he prevails, reasonable attorney fees up to the amount of $500 if the insurer's refusal is "vexatious and without

reasonable cause." We do not consider the defendant's refusal in this case to be vexatious, and therefore the statute is not applicable.

Judgment reversed.